Bennett v. Moon.

---

R. A. BENNETT, APPELLANT, v. C. W. MOON, APPELLEE.

FILED JULY 13, 1923.   No. 22390.

1. **Specific Performance.** Under a proper state of facts, courts of equity will take cognizance of actions requiring the specific performance of agreements concerning real property, including leases as well as deeds.

2. ———. While the granting of the equitable remedy for the specific performance of a contract to convey or lease real property is a matter of discretion, yet this means a sound discretion controlled by established principles of equity, and when the contract is in writing, is certain in its terms, is fair and just and capable of being enforced without hardship, the remedy should be granted as a matter of course.

3. ———: LEASES: IMPLIED COVENANTS. Where a written executory contract to lease contains a definite statement of the particular elements of the lease, but is silent as to the general, usual and ordinary covenants and conditions, these will be implied and a decree for specific performance granted.

APPEAL from the district court for Polk county: GEORGE F. CORCORAN, JUDGE. *Reversed, with directions.*

*Edward A. Coufal,* for appellant.

*Matt Miller* and *Mills, Beebe & Mills,* contra.

Heard before MORRISSEY, C. J., DAY and ALDRICH, JJ., COLBY and REDICK, District Judges.

COLBY, District Judge.

This action was instituted by the plaintiff, R. A. Bennett, to compel the defendant, C. W. Moon, to specifically perform their written agreement, under the terms of which the defendant had agreed to execute a lease for the first story and basement of a brick building owned by the plaintiff and located in the business section of David City, Butler county, Nebraska. The following is a copy of the agreement:

"This agreement made in duplicate, this 27th day of December, 1919, by and between R. A. Bennett of David City, Nebraska, as party of the first part, and C. W. Moon of Shelby, Nebraska, as party of the second part,

"Witnesseth: That the party of the first part has this day sold to the party of the second part, and the party of the second part has purchased from the party of the first part, all the stock of merchandise owned by first party located in David City, Nebraska.

"It is further and specifically agreed by and between the above parties that possession of said stock is to be given second party on the 1st day of February, 1920; that it is reserved to first party to sell any of said stock in a sale that first party may hold, and first party is to deliver to second party only so much of said stock as shall be left in said store after said sale, and on the 1st day of February, 1920; when said second party shall come into possession of said stock, then the parties agree that so much of said stock as shall remain in said store shall be invoiced, and second party shall pay to first party as the purchase price for said stock eighty (80) cents for each

one dollar of invoice price of said stock at the time of invoice.

"Second party has this day paid first party, and first party hereby acknowledges the receipt thereof, the sum of one thousand dollars ($1,000) as a part payment on said stock, and as earnest money on this contract. The balance of the invoice price of said stock over and above said $1,000 so paid, it is to be paid by second party to first party when possession is given and the invoice completed.

"It is further understood and agreed by and between the parties hereto that the first party is to lease to the second party for a term of five years the first floor and basement of the building where the Bennett store is now located in David City, Nebraska, which is the property of the first party, and second party agrees to pay therefor the sum of $100 per month payable on the first of each month. It is agreed that a lease shall be executed covering this agreement between the parties hereto as to said building.

"In testimony whereof the parties have hereunto set their hands this 27th day of December, 1919.

"(Signed) R. A. Bennett, First Party.
"C. W. Moon, Second Party."

"Executed in the presence of R. D. Fuller."

It is alleged in the pleadings and undisputed in the evidence that all the provisions of the agreement were completed and complied with, excepting those relating to the execution of the lease of the property; and it further appears that the defendant took possession of the property in February, 1920, pursuant to such written agreement, and paid the stipulated rental until January, 1921, when he removed his effects and ceased to pay rent, and that a lease was executed by the plaintiff with the usual covenants and tendered to the defendant for his execution, but that defendant refused to execute such lease, after formal demand, and plaintiff then commenced this action for specific performance.

The trial court found that the contract was fairly entered into and signed without any misconduct, conceal-

ment or misrepresentation or without any other inequit-
able contract on the part of either party; that such con-
tract was fair and just in its terms and was made upon
a valuable consideration; and that the terms of said agree-
ment were mutual.

The district court further found that the premises in-
tended to be covered by the terms of the contract for the
lease were the first story and basement in the brick build-
ing located on lot 4, in block 26, in the original town of
David City, Nebraska; that the defendant "took posses-
sion of said portion of said building pursuant to and in
performance of the contract;" that prior to February,
1921, the defendant "refused to further carry out said
contract;" that while a key to the building was turned
over to plaintiff, when defendant removed his effects, yet
the plaintiff did not accept the key with the intent of
abandoning his rights or canceling the contract obliga-
tions, or releasing the defendant from such contract.

The district court finished its findings with this state-
ment: "Upon the findings as above set forth the court
concludes as a matter of law that the parties to this action
never made or entered into any agreement as to the terms
of the lease for said building owned by plaintiff except
as to the rent to be paid per month and the term which
said lease was to run; and that, said parties never having
made or entered into any agreement as to the other terms
to be inserted in said proposed lease, the plaintiff is not
entitled to specific performance."

The first question presented for our determination is
whether the district court had equitable jurisdiction to
decree the specific performance of an executory contract
to lease.

The rule of law seems to be well settled that courts of
of equity will take cognizance of actions requiring the
specific performance of agreements concerning real
property, and that the rule applies as well to leases as to
deeds. This power of courts of equity is regarded as
discretionary, yet it is limited to fixed and established

equitable principles, and, unless exercised within these limitations, it has been adjudged to be arbitrary and capricious. It is generally held by the best judicial authorities that, under a proper state of facts, the right to the remedy of specific performance is perfect, and the court cannot, in any sense, exercise its discretion to deny relief. It has been announced that when a contract, of which equity has jurisdiction, conforms with certain equitable principles, which are quite limited in number, it is as much a matter of course for a court of equity to decree specific performance as for a court of law to give damages for a breach of the contract. The formula as to judicial discretion, therefore, is habitually used by the courts simply to indicate that the cases before the court are governed, not by legal rules, but by some well-established equitable principles.

Further, where the contracts involved concern land, or, in general, where land or any estate or interest in land is the subject-matter of the agreement, the jurisdiction to enforce specific performance is undisputed, and does not depend upon the inadequacy of the legal remedy in the particular case. To 'emphasize and restate the above principle, it is as much a matter of course for courts of equity to decree the specific performance of a contract for the conveyance or lease of real estate, which is in its nature unobjectionable, as it is for courts of law to give damages for its breach. Equity seems to have adopted this principle as a general governing rule. This is not because the land is fertile or rich in minerals, but because it is land, "a favorite and favored subject in England and every country of Anglo-Saxon origin." Land is assumed to have a peculiar value so as to give an equity for specific performance without reference to its quality or quantity.

The following extract from Pomeroy, Equitable Remedies (2d ed.) sec. 2184, plainly recognizes and enunciates the limitations upon the discretionary latitude applicable to suits for the specific performance of real estate contracts given to courts of equity:

"The granting the equitable remedy is, in the language ordinarily used, a matter of discretion, not arbitrary, capricious discretion, but of a sound judicial discretion, controlled by established principles of equity, and exercised upon a consideration of all the circumstances of each particular case. Where, however, the contract is in writing, is certain in its terms, is for a valuable consideration, is fair and just in all its provisions, and is capable of being enforced without hardship to either party, it is as much a matter of course for a court of equity to decree its specific performance as for a court of law to award a judgment of damages for its breach. This is the ordinary language of judges and text-writers. The term 'discretionary,' as thus used, is, in my opinion, misleading and inaccurate. The remedy of specific performance is governed by the same general rules which control the administration of all other equitable remedies. The right to it depends upon elements, conditions and incidents, which equity regards as essential to the administration of all its peculiar modes of relief. When all these elements, conditions, and incidents exist, the remedial right is perfect in equity."

These limitations upon the discretionary powers of courts of equity have been approved by this court in the following language: "Whether a decree for the specific performance of an agreement for the sale of real estate will be granted rests in the discretionary power of the trial court, sitting as a court of chancery. Such discretion, however, is not unlimited, and a decree is not to be given or withheld arbitrarily and capriciously, but it is a judicial discretion, to be controlled and governed by equitable rules and principles." *Hoctor-Johnston Co. v. Billings,* 65 Neb. 214. See, also, *Stanton v. Driffkorn,* 83 Neb. 36; *Waldo v. Lockard,* 96 Neb. 490.

The foregoing citations are sufficient to authorize us to answer in the affirmative the first question, and to show the recognized principle that equity takes cognizance of all actions requiring the specified performance of an

agreement concerning real property or any estate or interest in land, including the execution of leases.

The next question to be determined is whether the written executory agreement in respect of the particular terms of the lease agreed to be executed contains a definite and specific statement of all the material elements necessary to require the discretionary power of the court to enter a decree of specific performance.

It will be observed that the local or particular, material terms of this agreement to execute a lease are all definitely fixed and undisputed, and each of the parties has so admitted by the form of lease submitted by him. There is no disagreement whatsoever regarding the date of the commencement of the term, the duration of the lease, the rental to be paid, when payable, and the specific description of the premises demised. These are all fully understood and agreed upon by the parties. It seems to follow, then, that as to the real, necessary and material elements of the lease the agreement is clear, definite and complete, and upon these the parties seem to have been of one mind and the lower court in no doubt.

This brings us to the real or main matter of controversy in this case, which is that, where the material elements of the agreement to lease are definitely agreed upon, but the contract is silent as to the general, usual and ordinary covenants and conditions, can such a contract be enforced by specific performance? In other words, are these covenants and conditions to be implied in law, or must they be definitely set forth in the agreement in order to be inserted in the lease by decree of a court of equity? While the contract provides "that a lease shall be executed covering the agreement between the parties hereto as to said building," it is silent as to the usual conditions, covenants and other general provisions contained in an ordinary lease.

From an examination of the recognized text-books and the adjudicated cases, it appears that it has long since been the settled law that, where there is no specification

in the contract to execute a lease covering the usual and ordinary covenants and provisions, these will be implied by the courts of equity. This rule was established in England as early as the famous decision in *Dumpor's* case, and is clearly stated in *Church v. Brown,* 15 Ves. Jr. (Eng.) *258, *271, in this language: "There was no sort of difference, whether the agreement in the terms of it did or did not refer to usual or proper covenants; that in every agreement, whether as to freehold or leasehold estate, it was implied, that there were to be usual and proper covenants."

This rule of law is recognized, with some exceptions, by the courts of this country. In 36 Cyc. 792, the general principle of construction is briefly stated thus: "A contract to execute a lease calls for a lease with the usual covenants."

The annotator of the L. R. A. states the rule to be: "Specific performance of an agreement for a lease will be decreed with such covenants as are usual and incident to leases of the same kind, and such as flow from the contract and are necessary to give it effect." Note in 20 L. R. A. 36.

The same principle of law is announced in *Eaton v. Whitaker,* 18 Conn. *222, in which the court say: "Where nothing was said as to its terms, at the time when the agreement was made," the decree will require the demurring party "to execute a lease containing the usual provisions."

As has been noted, the same general established rules of law applicable to contracts for leases apply to contracts for deeds, and in general to all interests in land. The following are some of the numerous adjudicated cases so holding: *Dwight v. Cutler,* 3 Mich. *566; *Dewey v. Hines,* 87 Kan. 834; *Drake v. Barton,* 18 Minn. 462.

The author of the article entitled "Vendor and Purchaser" in Cyc., after an examination of the authorities bearing on this question, makes the following deduction as to deeds: "When the contract does not stipulate as

to the character of the deed or for covenants therein, some of the authorities hold that no covenants are necessary and that a quitclaim deed satisfies it. By the weight of authority, however, the purchaser, notwithstanding nothing is said in the contract regarding covenants, is entitled to a deed with covenants." 39 Cyc. 1555, and cases cited.

The learned counsel for the defendant, in opposition to this general rule of law, cite judicial authorities from several states, including the case of *Peterson v. Ramsey,* 78 Neb. 235. An examination of these cases is not convincing that the established rule of equity as to the usual and ordinary covenants and provisions should be done away with, and the case decided by this court referred to may be considered as but a proper modification of the rule as applicable to particular circumstances. The facts always require courts of equity to enforce, not an arbitrary rule, but to exercise sound discretion based upon established equitable principles.

The district court, in *Peterson v. Ramsey, supra,* decreed that the defendant should execute a deed of general warranty to plaintiff Peterson, but this was considered inequitable by this court, upon appeal, for the reason that Rublee had received only a quitclaim deed from Ramsey, which gave him no recourse upon Ramsey, and that therefore Rublee, who had no remedy against a prior grantor in case of failure of title, should execute simply a quitclaim deed with covenants against his own acts or omissions, and not a deed of general warranty.

The other cases cited by counsel for defendant fall far short of deciding that the rule of law established in the common law of England and generally approved in this country should not be adopted by the courts of Nebraska. Some of the cases referred to are in states where there is an express statute against "implied covenants" in real estate contracts. In others, a specific performance was refused because of a want of equity.

In *Finty v. Kinder,* 194 Ill. App. 115, especially relied upon by defendant's counsel, the court place the main

ground of refusal upon a waiver of the right, and use this language: "One who enters into an agreement to lease property for a term of years at a stipulated monthly rental waives his rights under the agreement, where the tenant refuses to sign and accept the lease proffered by the landlord and is permitted to remain in possession upon payment of the stipulated rental." It will be seen at a glance that this Illinois case does not pretend to decide that, where the agreement contains the material elements of the lease, the law will not presume the ordinary covenants and conditions and enforce the agreement.

In *Clarke v. Koenig,* 36 Neb. 572, this court properly held, in denying specific performance, that the contract was ambiguous and uncertain, and that plaintiff was in default of his part of the agreement, and also that the contract was for the sale of a homestead of a married person and had not been executed by both husband and wife, any one of which facts was fatal to the right of specific performance.

In *Krum v. Chamberlain,* 57 Neb. 220, this court held that the correspondence relied upon did not eventuate in a valid and enforceable contract, and hence the remedy should be denied.

It does not appear that any of the Nebraska cases cited by defendant's counsel hold adversely to the general rule recognized as to implied covenants and provisions in executory contracts for deeds or leases.

A careful consideration of the agreement and of the admitted facts in the instant case does not convince us that any subsequent negotiations were necessary between the parties or were contemplated by its terms. Each party had the right to assume that the stipulation for a lease, in its legal effect, was an agreement for a lease with usual and ordinary covenants and provisions, and the contract, with this legal implication, is complete. In any event, if such usual and ordinary covenants and provisions were not implied, then there would be a lease of the premises fixing the term, the beginning and ending thereof,

and the rent to be paid, and this in itself would make the lease complete and subject to the legal incidents operative in the absence of any express stipulation. The undisputed evidence proves that shortly after the agreement was complied with by the parties, with the exception of the execution of the lease, the plaintiff tendered a lease for execution by the defendant, claiming that such lease included the usual and ordinary covenants, as understood by the plaintiff; and a witness, whose testimony is undisputed, testified that the lease so tendered contained only the ordinary covenants and provisions in general use in the state of Nebraska. This lease the defendant refused to execute.

While it is held that certain covenants in a lease or deed are matters of law, such as quiet enjoyment, delivery of possession, etc., yet there are others which are properly held to be questions of fact, and that at different times and places the practice may vary and the court may look to books and precedents in determining what covenants are usual and ordinary, and that experts, such as conveyancers and others, may testify in regard thereto, and further that the question is to be considered in the light of the character of the property leased and the custom in the state or neighborhood.

The evidence shows that the defendant also tendered a lease to the plaintiff. This the plaintiff refused to execute. There is no evidence showing that the covenants contained in the defendant's proposed lease were the usual and ordinary covenants; but, on the contrary, one of the provisions therein was a clause which the defendant wanted to have inserted, but which is under no jurisdiction included among the common or usual provisions in contemplation of the law, or shown by any evidence to be in use in the state of Nebraska. The following is such objectionable provision: "And it is further agreed, that the party of the first part, should the party of the second part or his sublessee put in dry-goods stock for sale in premises, that said party of the first part shall

put in shelving of a kind and character necessary to conduct a dry-goods business, in said store, at his expense." Certainly, the plaintiff was justified in rejecting a lease including this unusual and unauthorized provision.

What both parties were entitled to under the agreement was to have a lease executed containing, not only the specific and necessary material elements agreed upon, but, in addition thereto, the common and usual covenants, conditions and provisions in use in the state of Nebraska. Either party had the right to reject a proposed lease because it included unusual and unauthorized provisions which could only be inserted therein by special stipulation and agreement. Because the defendant could not obtain, and plaintiff would not consent to, a lease which contained unauthorized and unusual provisions, the district court was not justified in finding that, "said parties never having made or entered into any agreement as to the other terms to be inserted in said proposed lease," the plaintiff was not entitled to specific performance. What the parties failed to agree upon were the unusual and unauthorized covenants and provisions.

As we have seen, the material elements were fixed and settled in the written agreement, and the usual and ordinary covenants and provisions applicable to leases in the state of Nebraska were implied, as a matter of law, and the undisputed evidence shows what these were. This agreement and the provisions which the law implies were all settled by the parties when they executed said written agreement, and it necessarily follows that the plaintiff was entitled to the specific performance of such agreement with all its specific stipulations and legal implications, and to have the lease, the terms of which had all been agreed upon and been implied by law, executed by the defendant. In accord with this view, there is nothing in the agreement from which the court can infer that other provisions and covenants are required to be specifically named and stipulated by the parties before the lease is executed. The material elements are certain and fixed,

and, as a part of such agreement, the usual and ordinary covenants and provisions in use in the state of Nebraska are made a part thereof by implication of law.

Under the established principles of equity and the facts, the plaintiff was entitled to the specific performance of the contract, and to have the defendant execute the lease tendered by the plaintiff and set forth in plaintiff's petition. The decree of the district court is reversed and the cause remanded, with instructions to require of the defendant his specific performance of the agreement as to leasing the premises in question.

REVERSED.