W. C. O'BRYON, Appellant, v. FRANK E. WEATHERLY et al., Appellees.

PLEADING: Construction—Mutual Construction of Indefinite Pleadings. Indefinite pleadings will be treated on appeal as sufficient to properly raise the issues when the parties have so treated them in the trial court. (See Book of Anno., Vol. 1, Sec. 11111, Anno. 9 *et seq.*)

VENDOR AND PURCHASER: Remedies of Vendor—Forfeiture of Improvements—Rights of Chattel Mortgagee. An equitable owner of land who, while holding the land under a contract of purchase which, in case of forfeiture, unconditionally forfeits all improvements thereon to the legal title holder, erects a dwelling house on the land with materials sold for such purpose, and on individual credit, may not, after he has forfeited or surrendered his contract of purchase, and while he is in possession of the land solely as a tenant, execute a chattel mortgage on the house to the seller of the materials, as security for the past-due purchase price of the materials, and *thereby invest the mortgagee with any right against the owner of the realty.*

FIXTURES: Intent in Making Annexation. The particular method of attaching a thing to the realty becomes quite inconsequential when

the parties admit that it was bought, sold, and erected with the mutual intent of having it become a fixture.

**Headnote 1:** 3 C. J. p. 725.  **Headnote 2:** 39 Cyc. p. 1639.  **Headnote 3:** 26 C. J. p. 660.

*Appeal from Marshall District Court.*—B. F. CUMMINGS, Judge.

JANUARY 19, 1926.

SUIT to recover on a promissory note signed by the defendants Weatherly, and to foreclose chattel mortgage on a building. Judgment for defendants. Plaintiff appeals.—*Affirmed.*

*E. N. Farber* and *M. M. O'Bryon,* for appellant.

*C. H. Van Law, Davidson & Burt,* and *James H. Van Law,* for appellees.

MORLING, J.—The principal question raised by this appeal is whether the dwelling house in the chattel mortgage sought to be foreclosed was a part of described real estate, or whether it was a chattel. The chattel mortgage was given by Weatherly. The house was erected on a farm owned by the defendant Brown. Before the construction of the house, the farm was sold on contract by Brown to Weatherly. After the construction of the house, the farm was leased by Brown to Weatherly, there having been in the meantime apparently a forfeiture or abandonment of the contract of sale. The pleadings and evidence on both sides are lacking in definiteness. Plaintiff thinks that his material allegations are not denied in the answers. Both parties have pleaded conclusions and evidential, rather than ultimate, facts. The defendant does allege that plaintiff knew, at the time of taking the chattel mortgage, that defendant was the owner of the premises and was claiming the ownership of the building as a part of them; that plaintiff acquired no right whatever in the premises by reason of the chattel mortgage. No objection to the pleadings was made on either side. The plaintiff undertook to prove his case as if the claims of the parties were properly pleaded. We shall have to treat them so.

1. PLEADING: construction: mutual construction of indefinite pleadings.

The evidence is that plaintiff had known Weatherly a long time; that in 1920 plaintiff had, at Liscomb, Iowa, lumber that had been measured and cut to fit into a house 26x26. Plain-

2. VENDOR AND PURCHASER: remedies of vendor: forfeiture of improvements: rights of chattel mortgagee.

tiff sold this material to Weatherly for $1,000, and shipped it. to Weatherly at Ringsted in Emmet County. The agreement was that Weatherly should give a note for the price, $1,000, due in one year. Weatherly did, on April 22, 1920, sign the note for $1,000 to plaintiff, due in one year.

Plaintiff testifies that Weatherly told him "he would like to buy this house and put it on his farm for his tenant to live in. * * * I had no knowledge or information on the subject of the ownership of this land from anyone, other than the statement Mr. Weatherly made to me at the time he bought this property, when he said he was going to move this property onto his farm."

Weatherly testifies that he and carpenters erected the house; that he put on siding and building paper and supplied the brick for the chimney and made a few changes in the plans; that he used the house for a hired man.

The house was set up on wood, cement, and stone blocks. There was not a continuous foundation under the whole four sides, no cellar, water pipes, or other connections, except that the electric light wires connected it with the other buildings and with the electric light plant in the cellar of another house.

Defendant Brown acquired the farm on which the house was erected in 1918. On May 28, 1919, Brown and Weatherly made a contract by which Brown agreed to sell the farm to Weatherly for $72,720, of which $2,000 was paid down, $2,000 was to be paid March 1, 1920, $16,000 March 1, 1921, and the balance, $52,720, March 1, 1930, to be represented by notes and mortgage to be given on March 1, 1921, at which time deed was to be given. The contract contained the ordinary "time of essence" and forfeiture clauses, "without any right of said second party [Weatherly] for reclamation or compensation for moneys paid or improvements made as absolutely and perfectly as if this contract had never been made." The contract also provided that all improvements placed upon the premises should remain thereon, and not be removed before final payment. The record

does not show what payments were made, further than acknowledgment of receipt of the first.

The record also shows a lease on the same premises from Brown to Weatherly for the term beginning April 5, 1921, ending March 1, 1922. The lease makes no reference to the house in question, by reservation or otherwise. In June, 1921, plaintiff went to the farm for the first time. Weatherly made plaintiff "some promises." On July 14, 1921, Weatherly and his wife executed the chattel mortgage in question, the mortgage stating that it was "given to secure purchase price of said material." No new note was given. Plaintiff says that, when he got the chattel mortgage, he knew nothing about Brown's mortgage or any claim of ownership of the land; that he had no information on the subject other than Weatherly's statement when he bought the material. Brown testifies:

"At the time I took this farm back, I did not know there was an unpaid purchase price on the claim that is made here."

There is no other evidence as to when or why he took the farm back, further than leases and the collecting of rents. Weatherly says that, in July, 1921, he was occupying the farm under lease; never had a deed to it or any interest other than what he held under contract. He moved off, March 1, 1923. In a letter dated February 4, 1922, written by Weatherly, which plaintiff says he received through the mail, Weatherly says:

"When we turned the farm back to Mr. Brown, he insured the house along with the rest of the buildings. * * * Mr. Brown claims the house belongs to the farm, as it was there at the time we turned it back to him and nothing was said about it not being paid for."

The Weatherlys filed petition in bankruptcy June 10, 1922, and later, procured their discharges.

I. The parties argue at length the question whether the house was or was not a fixture. The original deal between plaintiff and Weatherly was for the sale of material. It was stated, at the time, that the material was to be erected into a house on the farm, which both parties understood was Weatherly's farm. The question of title was not taken into consideration. Plaintiff imposed no condition that the material should remain person-

3. FIXTURES: intent in making annexation.

alty. No fraud is shown. At the time that the building was erected, Weatherly was occupying the farm under the contract, and was, in equity, the owner. Weatherly was not a mere tenant. The erection involved the expenditure of labor and the procuring of some other material. The house, on this record, was not a trade fixture. It was erected on the farm by the owner for farm purposes. The method of attachment is of little importance. Attachment by mere force of gravity, if the article is intended to be and is properly a part of the realty, is sufficient. That the foundation was temporary, or was not continuous, is immaterial. We think that the house, when erected, became a part of the farm. *Rahm v. Domayer,* 137 Iowa 18; *Smith v. Carroll,* 4 G. Greene 146; *Congregational Society v. Fleming,* 11 Iowa 533; *Peoria S. & M. Works v. Sinclair,* 146 Iowa 56; *Thomson v. Smith,* 111 Iowa 718; *State Sec. Bank v. Hoskins,* 130 Iowa 339.

II. The contract between Brown and Weatherly appears to have been in force when the house was constructed. Plaintiff had reserved no lien upon the house or upon the material which went into it. The material was sold absolutely, and became Weatherly's property. Weatherly, by building the house on the farm, made it a part of the farm, subject to the contract under which he held the farm. So long as the contract remained in force, the house could not be removed before payment of the contract price. The terms under which Brown took back the farm are not shown. Presumptively, when he reinvested himself with the title to the farm, he took all of the farm, including improvements and fixtures. Weatherly leased the farm from Brown without reservation, acknowledging thereby Brown's title to the farm, including everything that was a part of it. On the record as it stands before us, when Weatherly took his lease in April, 1921, Weatherly's interest in the farm, including the house, which was a part of it, was that of a tenant only. At that time, plaintiff claimed no lien on the house. If he had claimed a mechanic's lien, for instance, and was entitled to assert it, his interest would have been prior and superior to that of Weatherly. But instead of asserting any lien or interest superior to Weatherly's interest, he took a chattel mortgage from Weatherly. The chattel mortgage depended

upon, and could not rise higher than, Weatherly's title. Plaintiff extended no further credit, gave no value, and took the chattel mortgage for a pre-existing debt, which was not extended; says he didn't look up the records. No question of estoppel or notice or under the recording law is involved. It would seem to be clear that Weatherly, under these circumstances, could not, when he gave the chattel mortgage, assert title to the house, as against Brown, and could not by the chattel mortgage give plaintiff a lien upon it. *Peoria S. & M. Works v. Sinclair,* 146 Iowa 56; *Allis-Chalmers Co. v. City of Atlantic,* 164 Iowa 8; *Hooven v. City of Atlantic,* 163 Iowa 380. Plaintiff is seeking to recover a dwelling house apparently a part of the farm belonging to defendant, and has the burden of proof; and we do not think he has successfully discharged it.

III. Plaintiff, in his argument in reply, bases his case largely on *Fehleisen v. Quinn,* 182 Iowa 1283; but we think that has no application. The plaintiff's claim is for material sold to Weatherly in April, 1920. The sale was absolute. Plaintiff knew Weatherly, and sold him the material on his personal responsibility. There is no evidence as to what Weatherly's assets or liabilities at that time were, further than that he had bought the farm and was heavily indebted for it. What other property he had, we do not know. It is not alleged or proved that he was then insolvent. A great financial change, of which the courts take judicial notice (*O'Brien v. Lien,* 160 Minn. 276 [199 N. W. 914]), came over the country after this indebtedness was incurred. It was ruinous to debtors, especially to purchasers of high-priced land on credit. No fraud is claimed. When Weatherly was compelled to acknowledge his inability to pay for the farm, and to give it up, does not appear, other than as may be inferred from the lease made April 5, 1921, nearly a year after the debt to plaintiff was contracted. Weatherly had not been previously a tenant, nor was the house in question a trade fixture. It was nearly a year later that he went into bankruptcy. No fraud on creditors generally is made to appear.

The judgment is—*Affirmed.*

De Graff, C. J., and Evans and Albert, JJ., concur.