ELIZABETH G. BEARD, APPELLEE, V. MARGARET W. MORGAN ET AL., APPELLANTS.

10 N. W. (2d) 253

FILED JUNE 11, 1943. No. 31576.

504

Torgeson & Halcomb, for appellants.

John H. Kuns and Mothersead & Wright, contra.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

WENKE, J.

This is an action for specific performance brought by Elizabeth G. Beard, plaintiff and appellee herein, in the district court for Kimball county against Margaret W. Morgan and Severine E. Torgeson, defendants and appellants herein, to enforce a contract made with Margaret W. Morgan for the purchase of lots six (6) and seven (7), block one (1), Antelopeville addition to the city of Kimball, Nebraska, and from a decree for the appellee awarding specific performance thereof, appellants have appealed here. For convenience appellee will be herein referred to as Mrs. Beard and the appellants as Mrs. Morgan and Mr. Torgeson.

This being an equitable action it will be tried de novo in this court pursuant to section 20-1925, Comp. St. 1929, and we will reach an independent conclusion without referring to the findings of the district court.

The first question presented by this appeal is, was there a contract entered into between Mrs. Beard and Mrs. Morgan? On June 30, 1941, Mrs. Beard, by her attorney John H. Kuns, sent Mrs. Morgan an offer contained in the following letter:

"Mrs. Margaret W. Morgan
"2320 Veteran Street
"West Los Angeles, California
"Dear Mrs. Morgan:

"Mrs. Beard has advised me that she has heard from you with reference to the drug store property. I believe that someone has misinformed you as to the rights under the Nebraska law. If Mrs. Beard were not in the possession of the property, probably the advice which you have received would be correct. In view of the fact of her possession, your rights and her rights are entirely different. I would be pleased to correspond with your legal adviser and try to get this matter straightened out in an amicable manner.

"Mrs. Beard has just authorized me to make you an offer of $300 for a quitclaim deed. This offer is made only for the purpose of compromise and settlement and to avoid future disputes. It represents the amount which Mrs. Beard would pay to you for the period of one year under the old deal. If you care to accept this offer you may execute the quitclaim deed which I previously sent to you and send it either to myself, to the bank, or any individual whom you may choose to handle the exchange of the deed for the funds. This offer cannot remain open for more than two weeks.

"Please advise me promptly whether or not you will accept it.

"Very truly yours,<br>
"John H. Kuns."

On July 12, 1941, Mrs. Morgan replied thereto as follows: "John H. Kuns
"Attorney and Counselor at Law
"Kimball, Nebraska
"Dear Mr. Kuns—

"I am writing to inform you that I will accept Mrs. Beard's offer of $300 for a quitclaim deed—first of the week when I get into the village I will send the papers to you.

"Very sincerely,<br>
"Mrs. Fred R. Morgan."

Appellants' first contention is that no sufficient certainty is contained in this offer as to the property for which the offer is made as the first part of the letter refers to the "drug store property" whereas the drug store did not occupy all of the property but that there was located thereon a jewelry store in part of the building and that the construction of the building was such that it had the appearance of two separate buildings from the outside. However, the offer refers specifically to a quitclaim deed which had been sent to Mrs. Morgan on April 5, 1941, and which contained a full description of the property and the evidence shows that Mrs. Morgan had received the deed and that she was familiar with its contents. From an examination of the correspondence had between these parties prior to this letter of June 30, 1941, and to the reference of this quitclaim deed, there is no question but what Mrs. Morgan was fully aware of what property the offer referred to and by its reference to the quitclaim deed the offer is definite as to the property described therein.

Appellants further contend that there is insufficient consideration offered for the deed because at the time it was made Mrs. Beard had collected certain rents from both the jewelry store and drug store and at the time of the acceptance that additional amounts had been collected and, therefore, if these amounts were deducted from the offer made very little, if any, would remain and any such small amount would be an inadequate consideration. Quoting from the letter of June 30, 1941: "This offer is made only for the purpose of compromise and settlement and to avoid future disputes." At the time it was made, Mrs. Morgan was owing Mrs. Beard some $7,100 on a past due mortgage note secured by the property for which the offer was made and the subject-matter of their previous correspondence. Whether the rentals were deducted from this past due obligation or from the offer of $300, the total consideration for the deed would be somewhere between $7,100 and $7,400 which we find to be an adequate consideration.

Appellants further contend that Mrs. Morgan's letter of

July 12, 1941, was not such an acceptance of the offer as was binding upon her because such offer required that a quitclaim deed be executed and sent as therein provided, and that by the construction placed on said offer by the letter of Mrs. Beard's attorney of August 29, 1941, which is as follows:

"Mrs. Margaret Morgan
"2320 Veteran Street
"West Los Angeles, California
"Dear Mrs. Morgan:

"Mrs. Beard is somewhat distressed by the delay on your part in sending the deed as you promised.

"She feels that she would much rather pay the $300 to you than to spend it in Court costs where neither of you would gain any advantage.

"On that account she has instructed me to advise you that the deed must be here on or before September 15th. The sum of $300 will be ready to be paid to you immediately upon receipt of the deed.

"Very truly yours,
"John H. Kuns."

that Mrs. Beard did not consider Mrs. Morgan's acceptance as a binding contract and, therefore, we should adopt the construction placed thereon by the parties thereto. However, a careful examination of the offer made and the acceptance thereof shows it to be unconditional. The matter of executing the deed is the manner of performance not of acceptance and the letter of August 29 is a mere voluntary extension of the time for performance after Mrs. Morgan had made a breach thereof. Such voluntary extension of the time for performance, after a breach has been made, by a party not in default does not void the contract.

We find that the offer made by Mrs. Beard through her attorney on June 30, 1941, was a complete and definite offer to purchase from Mrs. Morgan lots six (6) and seven (7), block one (1), Antelopeville addition to the city of Kimball, Nebraska, for a consideration of $300 and in compromise and settlement of all matters between the parties, which

Mrs. Morgan unconditionally accepted, and that performance thereof was to be made by executing a quitclaim deed referred to and constituted a contract between the parties and that the subsequent extension of the time of performance made by Mrs. Beard, who was not in default, in no way voided the contract.

The second contention of the appellants is that even though there is a contract between the parties that the evidence does not justify this court in granting specific performance because, of the confidential relationship between these sisters-in-law, certain statements contained in the correspondence of Mrs. Beard and her counsel, Mr. Kuns, made the contract unfair. In order to determine this question, it will be necessary to consider the entire transaction between the parties. Fred R. Morgan, husband of Mrs. Morgan, died on December 7, 1934, and to settle his estate an agreement was entered into between Mrs. Beard and Mrs. Morgan whereby Mrs. Morgan gave Mrs. Beard a $7,100 mortgage on the property involved herein which was due on March 1, 1941, and pursuant to this agreement the sisters-in-law entered into a rent contract whereby that part of the premises which was occupied as the drug store was leased to Mrs. Beard from May 1, 1936, to May 1, 1941, and for which Mrs. Beard agreed to pay a rental of $25 a month, cancel the interest on the loan, pay five years' taxes on the premises, keep up the insurance thereon, heat the buildings located thereon, and to make necessary repairs. The other part of the premises occupied by the jewelry store was rented to Mr. O. C. Larsen and for this he paid a monthly rental of $40. Thereby, Mrs. Morgan received $65 a month from these premises until March 1, 1941, when the mortgage became due. These agreements were fully kept during the entire period up to March 1, 1941. About a year and a half prior to March 1, 1941, Mrs. Morgan moved to California where she lived at the time all negotiations herein referred to took place. It appears the relationship between Mrs. Morgan and Mrs. Beard was at all times friendly. Some time after March 1, 1941, Mrs. Beard wrote to

Mrs. Morgan about the loan being due and from then on and until the letter of June 30, 1941, as herein set forth, many communications, too voluminous to set forth herein, were had between the parties. Because of the friendly relationship of the parties as sisters-in-law, Mrs. Morgan's lack of business experience and her confidence in whatever Mrs. Beard would say, the appellants contend that Mrs. Morgan's acceptance of the offer was obtained by misrepresentation contained in the correspondence had by Mrs. Beard and her counsel, Mr. Kuns, with Mrs. Morgan. These letters referred to Kimball as a ghost town; that property values were depressed; that it was going back fast; that the only properties sold were those on forced sale and that no one was buying business properties for an investment; that business conditions were poor, also, that the least Mrs. Beard could take for the mortgage was $10,000 and her claims with reference to the rentals from the property. Mrs. Morgan testified she believed and relied upon these statements and would not have accepted the offer of June 30, 1941, had she not believed them and relied thereon. However, an examination of her letters to her sister-in-law in response to the communications from Mrs. Beard and Mr. Kuns does not present a situation where she was relying on what she was being told. From the very beginning it appears she was consulting her own counsel and was advised by him as to her rights in the property and the rentals therefrom and in her communications she set forth her rights as her counsel had told her and in her oral testimony she admitted having consulted with him from the very beginning. It further appears that after the letter of June 30, 1941, she consulted Mr. Partridge, an old friend of hers from Kimball county who had recently been back in Kimball, about conditions there and the advisability of accepting the offer; and it further appears from Mrs. Beard's letter of June 27, 1941, that she had informed her sister-in-law that she was turning this matter entirely over to her attorney; so it appears Mrs. Morgan was being fully informed of her rights by her own counsel and was not de-

pending upon the statements of her sister-in-law or her counsel in these matters or on her advice in regard thereto, but was seeking her own counsel and advice. That she was on the 12th day of July, 1941, when she accepted the offer, fully informed of her rights and, as she testified, entirely satisfied with the offer as she accepted it and with which she intended to comply until she consulted her attorney, Mr. Torgeson, and entered into an agreement for the sale of the property to him, is shown by the record. While she wrote a letter on September 12, 1941, advising her sister-in-law that she had decided not to accept her offer and was therefore returning the deed unsigned, this, however, was after her agreement with Mr. Torgeson of September 10, 1941. There is further evidence in the record as to the sale of three properties in Kimball in November of 1940 directly across the street from the property herein involved for the consideration of $5,000, $6,250, and $7,000 respectively. From the testimony of Mr. Torgeson as to the comparative values it appears that the properties involved here are worth any two of the properties sold. However, his qualifications in regard to knowledge of the buildings sold are very unsatisfactory and taken together with his testimony that he felt the contract he had entered into with his client, Mrs. Morgan, on September 10, 1941, for a consideration of $7,700, being the mortgage of $7,100 plus the contract purchase price of $600 with a possible $400 additional as provided in a supplement to the contract of September 10, 1941, which contained the following provision: "If a certain note given by the Farmers' Motor Fuels, Inc., can be purchased by me from Elizabeth G. Beard; if she be the purchaser of said property, I agree to pay you $400 additional," of which company he was executive secretary-treasurer and whereby he became the real party in interest so far as the title of the property is concerned, was fair, leaves little or no value to this testimony as to comparative values. Therefore, where as here, the appellee has paid a consideration of approximately $7,400 whereas Mr. Torgeson's contract, which he says is fair, calls for a sum of $7,700 with a possible $400

additional, can we say appellee's dealings have been unfair? We think the answer is no. We have examined the entire record carefully for the purpose of ascertaining whether or not, under the facts, the appellee is entitled to have her contract specifically performed. For specific performance will not be enforced unless the contract has been entered into with perfect fairness and without misapprehension, misrepresentation, or oppression. We find that during the entire transaction Mrs. Morgan did not deal with her sister-in-law on any confidential basis, but kept herself fully informed as to her rights in regard to the property; sought advice from a friend in regard to the offer made before its acceptance and was satisfied with it and intended to perform her acceptance at all times until she entered into a contract with Mr. Torgeson; that the amount offered and agreed to be paid for the premises is not unreasonable and is fair and that Mrs. Morgan was under no misapprehension as to her rights or as to the conditions in Kimball. Therefore, under the rule announced in *Bennett v. Moon,* 110 Neb. 692, 194 N. W. 802: "'Whether a decree for the specific performance of an agreement for the sale of real estate will be granted rests in the descretionary power of the trial court, sitting as a court of chancery. Such discretion, however, is not unlimited, and a decree is not to be given or withheld arbitrarily and capriciously, but it is a judicial discretion, to be controlled and governed by equitable rules and principles.' *Hoctor-Johnston Co. v. Billings,* 65 Neb. 214. See, also, *Stanton v. Driffkorn,* 83 Neb. 36; *Waldo v. Lockard,* 96 Neb. 490," the appellee is entitled to specific performance of the agreement made.

As to Mr. Torgeson, who by contract purchased the property from Mrs. Morgan on September 10, 1941, the evidence shows he was fully familiar with the entire dealings had between Mrs. Beard and Mrs. Morgan and is therefore bound by any decree entered against her as is stated in *Veith v. McMurtry,* 26 Neb. 341, 42 N. W. 6:

"A party who purchases real estate with knowledge that another has a contract of purchase for the same is not a

*bona fide* purchaser; and if he acquires such knowledge at any time before the payment of the consideration, he will not be protected as a purchaser in good faith. * * *

"A purchaser with notice is liable to the same equity, stands in his place, and is bound to do that which the person he represents would be bound to do by the decree. He takes the estate subject to the charge, and stands in the place of his vendor."

For the reasons herein stated, the decree of the lower court is affirmed.

AFFIRMED.