IZZIE GARSICK, APPELLEE, v. HATTIE V. DEHNER, APPELLANT.

15 N. W. 2d 235

FILED JULY 14, 1944. No. 31740.

*Votava & McGroarty*, for appellant.

*Carnazzo & Kaslow*, contra.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

CHAPPELL, J.

This is an appeal from a judgment of the district court for Douglas county decreeing specific performance of a written real estate purchase contract. Appellant, hereinafter called defendant, contends that the judgment of the trial court is contrary to the law and the evidence; that the contract lacks mutuality; that plaintiff's conduct in its inducement precludes the aid of equity; and that a mistake in the matter of consideration to be paid avoids specific performance of the contract. We find that these contentions are without merit.

An examination of the record discloses that defendant is a woman of experience in business and property matters,

being the owner of three apartments and other real property in Omaha, Nebraska. She conducted a business of her own in Omaha for many years. One of the properties owned by her is the Mayart Apartment, the legal description of which is lot 19, block 9, J. I. Redick's Subdivision, an addition to the city of Omaha, as surveyed, platted and recorded. It is the property involved in this appeal.

The Byron Reed Company, realtors, had the exclusive rental management of the property, but it is admitted that the property was, and for many years had been, for sale upon open listing and not exclusively. At the time of the transaction involved the property was mortgaged for a balance of $11,226.81. It was purchased by defendant and her husband for $24,000 in 1930. In the intervening years it was reconditioned, and a new boiler, gas stoves, and electric refrigerators had been installed. The property was of brick-veneer construction. It was erected some 22 to 24 years ago. It had been for sale upon open listing many years at $27,500 without any offers at that price or approaching that price. Both by letter and in her testimony at the trial defendant indicated that she was willing to sell the property for $25,000, subject to the mortgage. The income from the property was comparatively low. Without any consideration being given to principal and interest payments, its annual earnings for the last six-year period ranged from $2,-148.03 to as low as $491.19. The mortgage was reduced only $2,500 over a period of seven years. At the trial competent real estate men placed a value of from $20,000 to $24,500 upon the property.

With reference to the transaction at hand the City Loan Realty Company, realtors, submitted for plaintiff to defendant, through the Byron Reed Company, an offer of purchase for a consideration of $20,000, subject to the mortgage, which the offerer was to assume and agree to pay. The balance above the mortgage was to be cash. It was understood at all times that the Byron Reed Company was to share in the commission.

This offer was submitted by the Byron Reed Company to

defendant but it was rejected by her. Thereupon the Byron Reed Company orally suggested that the offer of plaintiff be raised $1,000. Thereafter it wrote the City Loan Realty Company a letter enclosing a form of purchase agreement to follow in making the new offer. The latter by use of this proposal drew the contract involved on January 31, 1943. It was prepared upon a "Uniform Purchase Contract" form used generally by real estate men in Omaha for many years. The form is printed with appropriate blank spaces for varying descriptions, consideration, and terms of purchase. The upper portion is the agreement to purchase which contains its terms and conditions. At the bottom is a space for signature of the purchaser, followed by form of receipt for earnest money and form of acceptance and agreement to perform the contract with space for signature of the seller. It differs from the Byron Reed Company's proposal in only minor particulars which are not of importance to this decision. As printed and typed the agreement to purchase, in so far as it is important here, reads: "I agree to pay for same Twenty One Thousand and no/100 ($21,000.00) Dollars, on the following terms, to wit: $100.00, deposited herewith as evidenced by your receipt attached below, and the balance cash, above the mortgage of about $11,226.81, on date of closing with interest at 5% per annum which purchaser assumes and agrees to pay." There were also provisions for prorating the taxes and insurance, adjustment of rents, and possession. In this form plaintiff signed the agreement to purchase and paid the $100 earnest money, subject to written approval and acceptance by defendant on or before February 10, 1943. The contract signed by both plaintiff and defendant is in evidence.

Defendant was out of the city at the time that plaintiff executed the agreement and an agent of City Loan Realty Company, in the presence of plaintiff and another, called defendant by telephone at St. Joseph, Missouri, on February 1, 1943. The evidence is that the agent told her in this conversation about the offer by plaintiff of $21,000, subject to the mortgage which the purchaser would assume and

agree to pay, leaving $9,000 or $10,000 cash net to her. Defendant denies that such matters were thus explained to her over the telephone, but she agreed to and did come to the offices of City Loan Realty Company on Thursday, February 4, 1943. There, defendant was handed the contract. She looked it over while she talked with an agent of the company. She testifies that she glanced over the contract but would not say whether she read it carefully all the way through. There is convincing evidence, however, that she was told at that time the amount remaining due upon the mortgage which the purchaser would assume and agree to pay, and the amount of cash she would receive above the mortgage. There is evidence also that she read the contract and said that it was a good deal. She admits that during the conversation she consented to an adjustment of $100 to plaintiff because of the shortage of one gas stove and one electric refrigerator; that she and the agent talked over the prorating of taxes and insurance and the adjustment of rents as of February 15, 1943; and that she authorized the company to get the abstract from the mortgagee for examination and to perfect its extension at her expense. She admits that she then signed the contract and delivered it to the agent. After defendant signed the contract a copy of it was delivered to the Byron Reed Company. It is stressed by defendant that plaintiff was guilty of offensive conduct in calling her over the telephone and otherwise dealing in part directly with her instead of exclusively with the Byron Reed Company, but under the circumstances presented here we find that the point is without merit.

When it came time to close the transaction plaintiff tendered complete performance, which was renewed at the trial, but defendant refused to perform, her chief contention being that there was a mistake on her part, by reason of the conduct of plaintiff, concerning the price and terms. That is, she insists that she understood and was told by plaintiff's agent that the price was to be $21,000 cash above the amount of the mortgage which plaintiff was to assume and agree to pay. However, we find, as did the trial court,

that the evidence and circumstances appearing in the record do not support this contention.

If there was any mistake or misunderstanding in the inception and execution of the contract it was only on the part of defendant. It was not a mutual mistake in any sense of the term. In this connection, the general rule is that, "Ordinarily, a unilateral mistake affords no ground for avoiding a contract, although it may do so where it results in a complete difference in subject matter so as to preclude existence of consideration, or where it is caused by, or known to, the other party," 17 C. J. S., sec. 143, p. 495.

There is no evidence which could support a finding that there was a complete difference in the subject matter so as to preclude existence of consideration. Upon the question of consideration the evidence is convincing that the price offered and received was adequate for the property. If it were not, there is an applicable rule controlling in this case to the effect that inadequacy of consideration alone is no defense to an action for specific performance of a contract unless so great as of itself to furnish an irresistible inference of fraud. *Moore v. McKillip*, 110 Neb. 575, 194 N. W. 465; *Price v. Fraser*, 119 Neb. 806, 231 N. W. 18.

We are convinced, as the trial court who heard and observed the witnesses must have been, that if there was any mistake it was not caused by plaintiff or known to him until claim of mistake was made by defendant just prior to or at the time of plaintiff's demand for performance. In this connection, it is generally held that courts will not permit a party to avoid a contract into which he has entered on the ground that he did not attend to its terms, that he did not read the document which he signed, that he supposed it was different in its terms, or that it was a mere form. *Von Knuth v. Ryan*, 107 Neb. 351, 186 N. W. 81; *Lincoln Joint Stock Land Bank v. Bexten*, 129 Neb. 422, 261 N. W. 845; 17 C. J. S., sec. 41f, p. 376, sec. 137, p. 487; 13 C. J., sec. 75, p. 277. As a matter of fact, the record herein is convincing that defendant knew full well all the terms and conditions of the contract from its inception.

Speaking generally, mutuality of obligation is an essential element of every enforceable agreement. However, "Mutuality of contract consists in the obligation on each party to do, or to permit something to be done, in consideration of the act or promise of the other. * * * Mutuality is absent when one only of the contracting parties is bound to perform, and the rights of the parties exist at the option of one only." 13 C. J., sec. 179, p. 331. See, also, 17 C. J. S., sec. 100, p. 443.

It will be observed that the contract at bar is by its terms an unconditional offer made by plaintiff, in writing, to purchase the property for a stipulated price, upon plain and simple terms and conditions, which offer was unconditionally accepted, in writing, by the defendant who thereby agreed to sell upon those terms and conditions. Plaintiff had paid the earnest money and thereafter tendered complete performance. Both parties are bound by the contract and there is no want of mutuality. *Iske v. Iske,* 95 Neb. 603, 146 N. W. 918; *Abel v. Gill,* 95 Neb. 279, 145 N. W. 637; *Beard v. Morgan,* 143 Neb. 503, 10 N. W. 2d 253.

As was said by this court in *Bauer v. Bauer,* 136 Neb. 329, 285 N. W. 565: "The right to specific performance is ordinarily termed a matter of judicial discretion. *Clarke v. Koenig,* 36 Neb. 572, 54 N. W. 842; 25 R. C. L. 214, sec. 16. It is not discretionary in the sense, however, that it may be granted or denied at the will or pleasure of the judge. Pomeroy, Specific Performance of Contracts (3d ed.) sec. 35. It is governed by the elements, conditions and incidents that control the administration of all equitable remedies. Pomeroy, Equity Jurisprudence (2d ed.) sec. 2184. While no rule of absolute obligation and authority in all cases can be laid down (2 Story, Equity Jurisprudence (14th ed.) sec. 1026), it should, in general, be granted as a matter of course, of a written contract, cognizable in equity, which has been made in good faith, whose terms are certain, whose provisions are fair, and which is capable of being enforced without hardship, where the ends of justice will be subserved thereby. *Bennett v. Moon,* 110 Neb. 692,

194 N. W. 802; * * * . If the party seeking the relief has been guilty of any conduct offensive to the conscience, the remedy may, of course, be denied, under the familiar maxims of equity." See, also, *Beard v. Morgan, supra.*

We have searched the record and, in conformity with rules of law heretofore stated, find that plaintiff and his agents were not guilty of any conduct offensive to the conscience of an equity court, that the contract was not lacking in mutuality, and that there was no mistake affording ground for avoidance of an enforcement thereof. It follows that the judgment of the trial court was amply supported by both the law and the evidence, and it is hereby affirmed.

AFFIRMED.