**SINCLAIR REFINING CO. v.
MILLER et ux.**

Civ. 103–51.

United States District Court
D. Nebraska, Omaha Division.

Sept. 19, 1952.

David R. Warner, Dakota City, Neb., for plaintiff.

Mark J. Ryan, South Sioux City, Neb., for defendants.

DONOHOE, Chief Judge.

This is an action for specific performance of an option contract for the purchase of certain real estate. Pursuant to Rule 56 (a), Federal Rules of Civil Procedure, 28 U.S.C.A., the plaintiff has moved for a summary judgment in its favor. The pleadings and certain admissions of the defendants, deemed to be admissions by reason of defendants' failure to respond to plaintiff's request for admissions (File No. 8) within the time required, Rule 36(a), Federal Rules of Civil Procedure, 28 U.S.C.A., disclose that there is no genuine issue as to any of the following material.

### Facts.

The plaintiff, Sinclair Refining Company, hereinafter referred to as Sinclair, is now, and has been at all times material to this action, a corporation duly incorporated and existing under the laws of Maine. The defendants, Fred Miller and Elsie Miller, husband and wife, are now, and have been at all times material to this action, citizens of the state of Nebraska, residing at 218 West 17th Street, South Sioux City, Dakota County, Nebraska.

By a written agreement, admittedly genuine, dated February 14, 1936, defendants leased to plaintiff Sinclair the following described real estate:

"The West Sixty (W.60) feet of Lots One (1), Two (2), Three (3) and Four (4), Block Eight (8), Central Addition to the City of South Sioux City, Dakota County, Nebraska, having the approximate Dimensions of Sixty (60) by Eighty-six (86) feet",

together with certain improvements to be placed thereon by the defendants to fit the described premises for use as a gasoline filling station. The initial term of the lease was for a period of ten years to commence upon completion of the improvements. By a supplemental agreement between plaintiff and defendants, dated October 27, 1936, October 3, 1936, was fixed as the date for the beginning of the ten-year leasehold term. The lease provided for a monthly rental of $70 payable in advance.

By the terms of the lease the plaintiff was given the following extension option:

"For the considerations herein named, Lessor gives and grants to Lessee the exclusive option and privilege of extending the term of this lease for *Five* (5) years, beginning at the expiration of the orginal term hereof, provided Lessee shall notify Lessor of Lessee's exercise of such option not less than *Thirty* (30) days before the expiration of the original term. Upon the giving of such notice, this lease shall be extended, and shall continue in full force and effect, with all of the agreements, obligations, conditions, and covenants herein set forth, for and during said extended term of years; and the execution by the parties of a new lease or an instrument of any kind, extending the term of this lease in accordance with such notice, shall not be required."

On July 5, 1946, plaintiff, in the manner provided in the lease, exercised its option to extend the leasehold period for five years from October 3, 1946, to October 3, 1951.

On January 31, 1951, the defendants gave the plaintiff another option, continuing for 60 days, to lease the premises which are the subject of this suit for a period of five years beginning October 3, 1951. This option expired unexercised and the rights given thereunder have been extinguished.

By Article XIV of the lease, dated February 14, 1936, the plaintiff was given the following purchase option:

"For the considerations herein named, Lessor hereby gives and grants to Lessee the exclusive option and privilege of purchasing the leased premises, including all, if any, of Lessor's improve-

ments and property thereon, whether real, personal or mixed, free and clear of all liens and encumbrances, for the sum of Eight Thousand and no/100ths ($8,000.00) in cash at any time during the original Ten (10) year term or during the option Five (5) year term, should Lessee exercise the option set out in the preceding Article, provided Lessee shall give Lessor not less than Thirty (30) days' notice of Lessee's election to exercise this purchase option. Upon Lessee's giving such notice, Lessor shall comply with the requirements of the second succeeding Article, entitled, 'Conveyance Requirements.'"

In connection with the purchase option the lease sets forth the following conveyance requirements:

"The giving by Lessee of notice of the exercise of any purchase option hereinbefore granted, shall fix and determine the right of Lessee to purchase the property included in the option which Lessee elects to exercise, and the obligation of Lessor to sell the same. Lessor shall furnish, free of expense to Lessee, within *Thirty* (30) days after the receipt of said notice, a complete Abstract of Title certified from title in the Government, Title Statement, or Title Guarantee Policy prepared and issued by a financially responsible title abstract company, or a Title Certificate commonly referred to as a 'Torrens Certificate of Title,' showing good merchantable title in Lessor as of a date not earlier than the date of said notice. A reasonable time will be allowed Lessee to examine such abstract or other evidence of title, and if the same does not then show good merchantable title in Lessor, a reasonable time will be allowed Lessor to cure defects and clear the title preparatory to delivery of deed and any other instruments required to effect the transfer and conveyance.

"Upon acceptance by Lessee of said title, and payment to Lessor of the purchase price herein specified, Lessor shall convey to Lessee or its nominee, by General Warranty Deed, a fee simple title in and to said real estate and the appurtenances thereunto belonging, free and clear of all liens, encumbrances, and charges of whatsoever character, with release of dower, curtesy, homestead, and all statutory rights; and shall also deliver to Lessee, free of expense to Lessee, such abstract or other evidence of title, showing good merchantable title to said premises in Lessor at the time of delivery of deed.

"If any personal property shall be included in the option, Lessor shall furnish evidence, satisfactory to Lessee, of Lessor's ownership thereof, and shall convey the same by Bill of Sale with full covenants of warranty.

"Such purchase shall serve to cancel the within lease in all particulars, and if Lessor shall have paid rents covering a period subsequent to date of delivery of deed, such payment shall be applied on and shall constitute a part of the purchase price of the property conveyed.

"If at the time of purchase there shall be a valid mortgage, trust deed, or like encumbrance against said premises or any part thereof, which cannot be then paid and satisfied without payment of penalty or bonus, the amount of indebtedness evidenced by such instrument shall be withheld by Lessee from the purchase price and conveyance shall be made subject to said indebtedness, Lessee assuming payment thereof."

On August 17, 1951, plaintiff transmitted by registered mail the following notice to the defendants at their residence:

"Registered Mail
Return Receipt Requested
"Notice of Election to Exercise
Purchase Option
"Fred Miller and
Elsie Miller
218 West 17th Street
South Sioux City, Nebraska

"You and each of you are hereby notified That the undersigned, Sinclair Refining Company, Lessee in that certain lease dated February 14, 1936, ex-

ecuted and delivered by you as Lessor covering the following described premises, to-wit:

"The West Sixty (W.60) feet of Lots One (1), Two (2), Three (3) and Four (4), Block Eight (8), Central Addition to the City of South Sioux City, Dakota County, Nebraska, having the approximate dimensions of Sixty (60) by Eighty-six (86) feet;
together with property of yours thereon specified in said lease which was extended by notice to you dated July 5th, 1946, has elected to exercise and does hereby exercise that certain option and privilege granted the undersigned in said lease of purchasing the above described premises and property free and clear of all liens and encumbrances for the sum and purchase price of Eight Thousand and no/100 ($8,000.00) Dollars in cash.

"You are further notified and requested To furnish to the undersigned at your expense an Abstract of Title as provided in said lease. Abstract of Title may be delivered to W. K. Fuhri, Attorney, Sinclair Refining Company, 601 Rialto Building, Kansas City, Missouri.

"Of all of which you will take due and timely notice and govern yourself accordingly.

"In witness whereof, the undersigned Sinclair Refining Company has caused these presents to be executed on its behalf by its Vice President, thereunto duly authorized, and its corporate seal to be affixed, duly attested by its Assistant Secretary, this *17th* day of August, 1951.

Sinclair Refining Company
(Signed) *By W. N. Damonte*
Vice President
"Attest:
(Signed) *R. E. Schuster*
Assistant Secretary
(Corporate Seal)"
This notice was received by defendants on August 21, 1951.

By a letter dated August 28, 1951, defendants, through their attorney, Mark J. Ryan, informed plaintiff that defendants declined to recognize the purchase option contained in the original lease dated February 14, 1936, and declined to comply with said notice of exercise thereof dated August 17, 1951. On October 2, 1951, the plaintiff filed this action for specific performance of the lease contract and particularly the purchase option provisions contained therein.

All of the rentals provided for under the lease agreement dated February 14, 1936, as extended by the notice dated July 5, 1946, have been paid in full by plaintiff and received by defendants for the period up to and including October 2, 1952. These rentals total approximately $12,600. The plaintiff has also performed all other obligations imposed upon it under the terms of the lease.

The defendants, as tenants in common, acquired title to all of Lot One (1), Block Eight (8), Central Addition to the City of South Sioux City, Nebraska, by deed dated April 23, 1936, recorded June 1, 1936, for a total consideration which did not exceed $1,000. Defendants acquired title to all of Lots Two (2), Three (3) and Four (4), Block Eight (8), Central Addition to the City of South Sioux City, Nebraska, by deed dated November 24, 1936, for a total consideration which did not exceed $2,000. Each of said lots is twenty-one and one-half feet wide in a north and south direction and one hundred sixteen feet long in an east and west direction. Slightly more than half (60/116ths to be exact) of lots one, two, three and four is covered by the lease agreement. The portion of these lots not covered by the agreement is still owned by the defendants who have constructed a duplex apartment thereon.

When the defendants acquired the real estate covered by the lease agreement there was only one small frame building thereon which the defendants removed. The cost of removal was less than the salvage value of the building recovered by the defendants. The improvements erected by the defendants on the property covered by the lease did not cost the defendants more than $4,-600.

The real estate and improvements thereon described in the lease agreement and subject to the purchase option are reasonably worth in excess of $8,000.

## Discussion

The defendants are citizens of Nebraska. The plaintiff is a citizen of Maine, the state of its incorporation. 1 Cyclopedia of Federal Procedure, sec. 2.284, p. 462, notes 66 and 67. In a suit for specific performance of a contract to convey real estate the amount in controversy is the value of the property involved, Ebensberger v. Sinclair Refining Co., 5 Cir., 1948, 165 F.2d 803, which in this case is admittedly more than $8,000. Consequently the court has jurisdiction of the action since it is between citizens of different states and the amount in controversy exceeds $3,000, exclusive of interest and costs. 28 U.S.C.A. § 1332.

The contract sought to be enforced was executed in Nebraska, the subject matter of the contract is located in Nebraska and the essential acts of performance must take place in Nebraska. Therefore the substantive law of Nebraska controls enforcement of the contract in question. 11 Am. Jur., Conflicts, sec. 116 et seq., p. 397. Further, this court must apply the law as declared by the legislature and courts of Nebraska. Eric R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

The remedy of the specific performance of contracts is purely equitable given as a substitute for the legal remedy of damages whenever that remedy is inadequate or impracticable. 4 Pomeroy, Equity Jurisprudence (5th Ed.), sec. 1401, p. 1033. Where land is the subject matter of the agreement the inadequacy of the legal remedy is well settled and equity has jurisdiction. Although this jurisdiction is discretionary, it will be exercised as a matter of course and specific performance granted where the contract is in writing, is certain in its terms, is for a valuable consideration, is fair and just in all its provisions and is capable of being enforced without hardship to either party. Bennett v. Moon, 110 Neb. 692, 194 N.W. 802, 31 A.L.R. 495; Beard v. Morgan, 143 Neb. 503, 10 N.W.2d 253.

An option to purchase contained in a lease, when accepted, is specifically enforceable in equity. See 49 Am.Jur., Specific Performance, sec. 120, p. 141. Such an option is supported, so far as consideration is concerned, by the payment of the stipulated rent reserved, so that it cannot be withdrawn by the lessor during the period specified for its continuance. 32 Am. Jur., Landlord and Tenant, sec. 299, p. 278.

In this case the option was properly exercised by the plaintiff when it gave the notice of exercise in the manner provided in the lease within the time allowed. The defendants, however, refused to perform their agreement. In this connection they do not assert that the plaintiff was guilty of any fraud, misrepresentation, overreaching or unfair concealment; nor do they rely on any mistake. The sole issue tendered by way of defense is:

"That due to this unprecedented and unforeseen state of inflation, and not on account of natural or ordinary conditions, the real estate involved and described in plaintiff's Complaint has greatly increased in value, and is now worth at least three times the price stipulated in the option contained in 'Exhibit A' attached to plaintiff's Complaint. That it would be unjust and (in)equitable to enforce the terms of said option, and the enforcement thereof would result in gross injustice and oppression to the defendants; that the sum stipulated in said option could not under present conditions be re-invested to return but a small fraction of the rent stipulated in Article III of Exhibit A, and this would result in great hardship to the defendants."

The court is of the opinion that this defense does not present any genuine issue of fact. Judicial notice will be taken of a great financial change coming over the country. See O'Bryon v. Weatherly, 1926, 201 Ia. 190, 206 N.W. 828, in which the Supreme Court of Iowa took judicial notice of the depression of 1921. However, even if the court takes judicial notice of the inflationary conditions presently existing and finds that the property is now worth three times as much as the amount fixed in the option

886

agreement contained in the lease executed in 1936, the defendants have still failed to establish a valid defense to the enforcement of the contract in question. It is well settled that

"Specific performance of a contract fair when made will not necessarily be denied because it has become a hard bargain through subsequent events and changed conditions; and it may be said to be the general rule that the mere fact that the value of property which is the subject of a contract has increased or diminished since the contract was executed will not ordinarily warrant a court in refusing to grant a decree of specific performance, in the absence of circumstances indicating fraud or bad faith. Equity will not refuse specific performance merely because of the fact that property contracted to be sold for a price that was fair when the contract was executed has become considerably more valuable at the time performance is due, or, on the other hand, is much less desirable at the time of performance than when the contract was entered into."

49 Am.Jur., Specific Performance, sec. 64, p. 78.

By enforcement of the contract the parties will receive just what they voluntarily bargained for. Upon complete performance of the contract the defendants will have received approximately $12,600 in rentals and $8,000 in purchase money for property which cost them less than $7,000. This does not seem unconscionable. The consideration given by the plaintiff for the contract is, in all respects, adequate and no hardship will result to the defendants by enforcing the contract according to its terms.

The unexercised option to lease the property in question, dated January 31, 1951, having expired, did not affect the rights of the parties to the contract in suit.

The court concludes that the plaintiff is entitled to the summary judgment requested. Counsel for the plaintiff shall prepare and submit for approval the appropriate judgment to be entered in accordance with this memorandum.