ROBERT A. GOODALL, APPELLANT, v. W. H. SWARTSLEY ET
AL., APPELLEES.

FILED JUNE 12, 1922.   No. 22001.

1. Specific Performance: "Courts of equity will not always enforce
   a specific performance of a contract. Such applications are ad-
   dressed to the sound legal discretion of the court, and the court
   will be governed, to a great extent, by the facts and merits of
   each case." *Morgan v. Hardy*, 16 Neb. 427.

2. Evidence examined, and *held* to sustain a decree denying specific
   performance.

APPEAL from the district court for Buffalo county:
BRUNO O. HOSTETLER, JUDGE. *Affirmed.*

*Hainer, Craft & Edgerton* and *John J. Reinhardt*, for
appellant.

*Pratt & Hamer* and *I. D. Beynon*, contra.

Heard before LETTON, DEAN and FLANSBURG, JJ., DAY
and GOOD, District Judges.

DAY, District Judge.

This is an action in equity for the specific performance
of a contract for the sale of a quarter section of land in
Keith county, Nebraska. Two men, Swartsley and Olson,

entered into a contract for the purchase of said land from
one Boyd for $9,600, with a cash payment of $1,000. Sev-
eral days later Boyd entered into a contract for the pur-
chase of said land from the owner, Goodall, for $8,000,
and paid him the same $1,000. Goodall brings this action
for specific performance, not against Boyd, but against
Swartsley and Olson. The trial court denied specific per-
formance and decreed that defendants recover the amount
paid upon the contract from plaintiff. The plaintiff,
Goodall, appeals to this court.

The issues in this cause are briefly set out in appel-
lant's brief, as follows: First. Is Goodall entitled to spe-
cific performance of this contract? Second. Does the evi-
dence support the allegations of misrepresentation on the
part of the agents of plaintiff? Third. Are these alleged
misrepresentations sufficient to defeat the appellant's right
to specific performance?

Goodall alleges that Boyd was his agent and that the
contract between Boyd and Swartsley and Olson was
made for him. From the evidence it appears that Boyd
contracted to sell this land to Swartsley and Olson, sub-
ject to the approval of the owner. Until the owner ap-
proved, the $1,000 payment was to stay in the bank. Later
Boyd entered into a contract to purchase the same land
from Goodall, the owner, and turned the same $1,000 over
to Goodall as first payment. These two contracts were
identical, except for the consideration, and must be con-
strued in the same way. A court of equity cannot con-
strue one as a real estate dealer's contract for commission
and the other as a contract for the sale of real estate. The
logical conclusion seems to be that Boyd bought and sold
this land for a profit of $1,600, and that no contract exists
between Goodall and Swartsley and Olson. This view is
almost forced upon us by the letter of Goodall to Swarts-
ley, within a short time after the defendants had refused
to go on with their contract, in which he wrote: "This
settlement does not really make a particle of difference
one way or the other to me, as I sold the land direct to

the Boyd Land Company." In the case of *Morgan v. Hardy,* 16 Neb. 427, this court held: "Courts of equity will not always enforce a specific performance of a contract. Such applications are addressed to the sound legal discretion of the court, and the court will be governed, to a great extent, by the facts and merits of each case." This holding was followed in *Lopeman v. Colburn,* 82 Neb. 641, *Furse v. Lambert,* 85 Neb. 739, and many other cases. Goodall was not in this case entitled to specific performance, but his application was directed to the court's sound legal discretion.

The evidence discloses that the defendants sought to make an examination of this land; that upon their first visit they only saw a small corner of the quarter section. The next morning it was raining so that Swartsley did not feel able to go out to the land, but Olson made an attempt to inspect. He was taken by an associate of Boyd's, but almost as soon as they drove upon the land their automobile became stuck in the mud. He saw the same corner of the quarter he saw the evening before, and this is admitted to be the best part of the land. This was in the summer time and the densest vegetation of the year covered the land. Olson returned to town and never saw the land again before he and Swartsley signed the contract with Boyd. He testified that he was a stranger in the country and relied upon the representations made by Boyd. Swartsley was familiar with some other land in that county and Boyd assured him that this land was as good as some particular land he already owned. Neither he nor his associate said anything about the sand ridge or the sandy part of the land. They did not see fit to mention the lagoon of buffalo wallows, and did not tell them about the deposits of magnesia. According to the testimony of Boyd, none of these things impairs in any degree the value of the land. Boyd and his associate were able to limit the examination of Swartsley and Olson to the best part of the land, and they were not afforded an opportunity to examine the land, but were forced to depend

upon the representations made by Boyd, and the real character of the land was not disclosed to them.

We have examined this case *de novo,* and we conclude that there is such misrepresentation as to justify the court in its sound legal discretion to deny specific performance. The rescission was made within a reasonable time after discovery of the misrepresentations. Goodall admits that he received the $1,000 paid by defendants, which they ought to recover. For the reasons heretofore set out, the decree of the district court is

AFFIRMED.