CRETIE WIIEST, APPELLANT, V. HORACE C. POUNDS ET AL., APPELLEES.

8 N. W. (2d) 211

FILED FEBRUARY 26, 1943. No. 31475.

*Hoagland, Carr & Hoagland,* for appellant.

*Halligan, McIntosh & Feltz* and *Beatty, Maupin, Murphy & Derry,* contra.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

MESSMORE, J.

This is an equity action, in which the plaintiff seeks to have the court decree her to be the owner of an undivided one-third interest in and to three quarter-sections of land, and the defendant to be decreed trustee for the plaintiff for her interest in the land, and to render an accounting of the rents and profits collected by him, and of the money paid out for taxes and instalments due on a Federal Land Bank loan. The action arises from the following facts:

Caroline I. Pounds, the mother of 11 children, two of whom are the plaintiff and defendant, died intestate No-

vember 27, 1934, owning certain real estate. Each child was entitled to one-eleventh interest therein. Lloyd, a son, instituted partition proceedings. The petition filed February 8, 1937, alleged that the plaintiff had heretofore sold, assigned and transferred her interest to the defendant Mary A. Walker and had no further interest in the real estate. The judgment in partition, entered April 5, 1937, decreed an undivided one-eleventh interest to Irving Wiiest, plaintiff's husband, Mary A. Walker having transferred plaintiff's interest to him.

The first sale was held May 11, 1937, and all of the property was bid in by the defendant for $6,600. On May 14, 1937, several of the heirs entered into an agreement that they did not want to accept such amounts; consented to the purchase of the property by the defendant as trustee for the benefit of all persons interested, and agreed to sign a receipt for their distributive shares. The sale was set aside August 24, 1937. October 26, 1937, a second sale was held. There were no bidders. The court ordered that the real estate be readvertised and sold. The third sale was held April 11, 1939. Defendant purchased all the property, including town property, for $5,600. July 12, 1939, the court opened the sale, received bids in open court, and the three quarter-sections involved were sold to the defendant for $5,000. Sale was confirmed. The plaintiff and her sister, Mary A. (Addie) Walker, were desirous of retaining their respective shares in the land, and it was generally understood orally that the heirs would be contacted to ascertain who, if any, wanted to retain their interests. It developed that the plaintiff, Addie Walker and the defendant were the only ones.

While much discussion appears in the record as to whether the defendant bid in the land for the two sisters and himself, or just to protect his own interest, a written agreement, containing all of the oral agreement, was entered into August 5, 1939. It provided in substance as follows: That certain lands belonging to the estate (as aforesaid) were sold at referee's sale and purchased in the name of

the defendant, "who has made application to the Federal Land Bank for a loan for a sufficient amount to satisfy the remaining persons interested in said property, and whereas the persons above named desire to retain an equal interest in said land, * * * it is hereby agreed that * * * (defendant) retain title to said land in his name, that he secure a loan from the Federal Land Bank; that the said parties each pay to the First National Bank, Ogallala, to apply on the temporary loan made by (to) them, the amount of their distributive shares in said partition suit, * * * $513.48, *and such additional amount as may be necessary to pay their proportionate share after said loan is secured from the Federal Land Bank, and thereafter that * * * (defendant) agrees to convey to * * * (plaintiff) an undivided one-third interest in said land subject to said loan.*" (Italics supplied.) Then mention is made that the sisters would execute a power of attorney, authorizing defendant to have charge of the land, collect rentals, pay taxes and instalments, as they become due, to the Federal Land Bank. It was further agreed "that the parties hereto will not sell or dispose of their respective interests in said land except to the other parties," and that the agreement "shall not be subject to record." The agreement was signed by defendant, plaintiff and Mary A. Walker.

On July 20, 1939, after confirmation of the sale, the sisters being unable to raise money, the defendant arranged with the First National Bank of Ogallala for a temporary loan, and in addition sold some 2,300 bushels of wheat for 50 to 55 cents a bushel, which, if held, would have been worth 63 cents a bushel on a government loan, or, if held until May of the following year, 95 cents a bushel. To consummate the transaction, the defendant was forced to raise the money himself, and paid the referee $5,000 on July 26, 1939. The title to the three quarter-sections of land was then in defendant's name. The plaintiff contends that the distributive shares of the three from the partition proceedings, plus a 200-dollar item owing by a brother, made the difference between the 3,300-dollar loan of the First Na-

tional Bank and the $5,000 to be paid the referee. August 5 the written agreement, hereinbefore set out, was entered into.

On August 6, 1939, defendant received an offer of $2,700 for one of the three quarter-sections, which would leave a half-section for the three interested heirs, upon which the federal loan would be unnecessary. He approached Addie Walker on the proposition, and at the same time requested $300 for his work and sacrifice when raising the money to complete the transaction. Addie declined to pay the extra amount, and a check was written out for her distributive share, which she accepted but did not cash until later. She made a statement of the expense as given her by the defendant, which included a new abstract, bringing the abstract down to date, inspection thereof for the loan from the First National Bank of Ogallala, the application for the Federal Land Bank loan, the interest on defendant's money, and miscellaneous costs. Another exhibit, prepared by defendant, discloses items of expense of like nature, but of a larger amount. This expense does not show the full amount for which each of the interested heirs would be obligated to pay $300.18, unless, as testified by the defendant, they agreed to reimburse him for his time and the sacrifice that he had made in order to complete the deal for them. This is denied, Addie Walker contending the contract did not provide for such items. The defendant was unable to discuss with plaintiff the sale of the quarter-section, due to a death in the family.

With reference to the item of $300.18, the defendant testified that the plaintiff was not willing to pay him anything. To the question: "What did you tell her?" he answered: "I told her that I had to sell my wheat, cleaned my place, having to take every dime I had to live on, in order to buy that land, * * * I asked her three hundred, it was no set price, we hadn't come to any conclusion." He testified that the 1st of August he talked to his sisters about the expenses incurred in connection with the loan and asked if they wanted to go in and if they wanted to pay

him for his time and expenses. "Q. And what was said? A. I told them, if I could get paid for it, they would certainly go in, and they said, sure." No figures were stated. The sisters were to make the settlement when the Federal Land Bank mortgage came back. The quarter-section was not sold.

On December 13, 1939, the defendant wrote his sister, Addie Walker, asking her what she intended to do, pay her share of the money for expenses, or cash the check which she held, stating that he had received the Federal Land Bank loan, which was $3,000 net to him, and that he was ready for settlement; that he had not changed his mind with reference to the expenses; that they were the same as when she talked with him; that she had to do one thing or the other by December 23, 1939, cash the check, make the settlement, or call the agreement off. He likewise wrote the plaintiff that he wanted the matter settled by December 23, 1939. The three heirs were to meet at an attorney's office, but on the appointed day the sisters did not appear. The plaintiff's husband was present, made no reference to the contract, but questioned the defendant about the distributive share, evidencing the plaintiff's interest being paid into court to satisfy a judgment obtained by one Goodall against the plaintiff on May 2, 1932, wherein the defendant had been garnished, to which he answered October 30, 1939, that he was indebted to the plaintiff in the sum of $513.48. He was ordered by the court to pay such amount into court. Finally, Addie Walker cashed the check for her distributive share and withdrew from the transaction.

In connection with the garnishment, the record discloses that Goodall obtained a judgment against the plaintiff May 2, 1932, for $453.70. On March 7, 1935, a praecipe was filed with the *ex officio* clerk of the district court to issue an execution on this judgment. The record does not show a levy or return of the execution. On September 29, 1939, another execution was issued and returned unsatisfied, resulting in the garnishment proceeding referred to

previously. The plaintiff denied any notice of such proceeding. Summons against the garnishee was left at the usual place of residence of the plaintiff, as shown by the return, dated September 29, 1939. Garnishee answer day was October 30, 1939. A letter (exhibit 6) to the judgment creditor, which the plaintiff said she was not sure she wrote, but purported to have been signed by her, dated "10-2-39," mailed October 2, 1939, speaks of the judgment creditor holding a judgment against the Pounds estate, so that the federal loan would not go through, and contains a statement with reference to certain merchandise purchased by her from the judgment creditor. The attorney's requirements on the Federal Land Bank loan designate that the judgment of Goodall against the plaintiff should be released.

A stipulation shows that the only record since the partition proceedings with reference to the title is a deed to the defendant, as described in the partition proceedings, and a mortgage to the Federal Land Bank. The only conveyance is the record of the deed made by the referee to the defendant for a consideration of $5,000 July 26, 1939, recorded July 27, 1939, and a mortgage from defendant and wife to the First National Bank of Ogallala, dated July 26, 1939, recorded July 27, 1939, for a consideration of $3,300, which was released and canceled of record December 15, 1939, and a mortgage from the defendant to Federal Land Bank, dated September 12, 1939, recorded October 27, 1939, which was canceled and released June 18, 1941. All mortgages, at the time of trial, were paid and canceled.

On January 17, 1940, the plaintiff wrote defendant that her sister, Mrs. Walker, had sold her share, and under the terms of the agreement, that the plaintiff was entitled to a half interest in the land, and that she wished to take $1,500 "and get out;" that the rest of the heirs need not know about it unless the defendant told them; she never would. She made some reference to the personal relationship between her family and the defendant and informed him that he was "getting off cheap at $1,500. * * * I need the money.

I want to buy an apartment house in Denver so I can be with my kids." She also stated that in the alternative she would still continue with the deal.

During the progress of the trial, plaintiff asked leave to amend her petition to offer to pay to defendant, in the accounting, any sum that the court may find to be due from the plaintiff to the defendant on account of contracts and issues made in this case. Leave was granted. The contract, contrary to its terms, was filed of record on February 20, 1940, by plaintiff with the register of deeds of the county. The defendant's cross-petition prayed for an order canceling the record of the agreement, and for an order quieting title in and to the real estate in him, as against all claims of the plaintiff, her husband, Mary A. Walker and her husband. The court dismissed plaintiff's petition and cause of action, and the cross-petition of the defendant. Plaintiff appealed.

Plaintiff contends that the trial court erred in finding there was insufficient evidence to sustain the allegations of her petition; that the written contract was to the effect that, if plaintiff did not object to confirmation and paid her distributive share, in the partition proceedings, on the purchase price, a resulting trust was created. Several cases are cited that hold: "Generally, where the purchase-money of land is paid by one person and the conveyance is taken in the name of another, the party taking the title is presumed to hold the estate in trust for him who pays the purchase price." *Bailey v. Dobbins,* 67 Neb. 548, 93 N. W. 687. That is to say that the plaintiff having paid her distributive share in the partition proceedings,—the $513.48, —the same constitutes purchase-money to apply on an undivided one-third interest in the three quarter-sections of land here involved. The title being taken in the name of the defendant, under the circumstances a resulting trust arises.

The plaintiff also cites the following authority with reference to specific performance, *Bennett v. Moon,* 110 Neb. 692, 194 N. W. 802, wherein this court said (p. 695): "The

rule of law seems to be well settled that courts of equity will take cognizance of actions requiring the specific performance of agreements concerning real property, and that the rule applies as well to leases as to deeds. This power of courts of equity is regarded as discretionary, yet it is limited to fixed and established equitable principles, and, unless exercised within these limitations, it has been adjudged to be arbitrary and capricious. It is generally held by the best judicial authorities that, under a proper state of facts, the right to the remedy of specific performance is perfect, and the court cannot, in any sense, exercise its discretion to deny relief. * * * The formula as to judicial discretion, therefore, is habitually used by the courts simply to indicate that the cases before the court are governed, not by legal rules, but by some well-established equitable principles."

In applying the foregoing decisions to the instant case, plaintiff contends she and her sister relaxed their efforts to have the real estate sold at a higher price by not bidding thereon, under an arrangement with the defendant, thereby avoiding competition, and such was sufficient consideration. In this connection the evidence is in conflict as to whether the defendant was bidding for the benefit of the sisters or to protect his own interests. It is established that, if he bid at all for the benefit of his sisters, it was at the time of the last sale of the land in the judge's office. The agreement seemed to be that those who desired to retain an interest in the real estate could do so and become a shareholder therein by paying their proportionate share as set forth in the contract.

The plaintiff further bases the applicability of the foregoing holdings, and contends that the evidence shows the defendant considered the plaintiff as a part owner of the realty on December 13, 1939, when he sent her the letter informing her that the Federal Land Bank loan had been received, and to meet him December 23 and settle the matter. It is true the defendant recognized plaintiff's interests as set forth in the contract, notified her to come in

and abide by its terms, which she did not do. The plaintiff further contends the letter of January 17, 1940, sent by plaintiff to the defendant, disclosed that she retained an interest in the real estate and believed she had a greater interest at that time on account of the withdrawal of her sister. Our view of these circumstances, in connection with the authorities which we deem applicable, is hereinafter set forth.

With reference to the contract, it provided that the defendant was to retain title in the land in his name. He was to secure a loan from the Federal Land Bank. The plaintiff was to pay her distributive share in the partition suit, —$513.48,—to apply on a temporary loan made to the defendant, the plaintiff and their sister by the First National Bank of Ogallala. This money was paid to the defendant and used in the purchase of the real estate, either in the manner provided by the contract, or as he saw fit in consummating the transaction. The evidence, as heretofore stated, discloses that he procured the $3,300 by using his own money, selling the wheat to raise it, because it was necessary that the referee be paid. This was done July 26, 1939. The contract further provided that there would be an additional amount to be paid, necessary to consummate the purchase, which amount would be determined after the loan was secured from the Federal Land Bank, and the plaintiff was to pay her proportionate share thereof. The loan was secured, and the defendant requested that settlement be made on December 23, 1939. There was no settlement made. The evidence with respect thereto has been previously stated. The contract provided further that the defendant agrees to convey to the plaintiff an undivided one-third interest, subject to the Federal Land Bank loan, and upon doing so the plaintiff was to execute a power of attorney, authorizing the defendant to have charge of the land, collect rentals, pay taxes and instalments as they became due to the Federal Land Bank. This was not done, presumptively because there had been no conveyance made by the defendant to the plaintiff of the undivided one-third

interest. Then the contract provided that the interested parties should not dispose of their respective interests in the land except to the other parties, and thereupon plaintiff would accept the sum of $513.48, together with such additional amount or amounts as may be contributed or advanced for taxes, interest, loan instalments, etc. The plaintiff infers that the garnishment proceedings interrupted her in performing her part of the contract. The garnishment proceedings, the legality thereof, and whether or not the defendant should have paid the plaintiff's distributive share into court thereunder, while questionable, are not determinative of his case. The amount which was garnisheed was insufficient to take care of the plaintiff's obligation, and, even though the garnishment had not been issued, still plaintiff would have no cause of action for specific performance of the contract or the declaration of a trust, for the reason that she has never complied with the contract by accounting to the defendant for her share of the additional expense, due after the Federal Land Bank loan had been consummated. On December 23, 1939, the date set for settlement, she did not appear. Only her husband appeared and raised the objection, as stated. Nothing further was done with reference to the settlement on that date or thereafter.

On January 17, 1940, plaintiff sent the letter referred to to defendant. There is nothing in plaintiff's conduct that would warrant the belief that she intended to comply with the contract, but, rather, that she had abandoned it. Then she wrote to Goodall's attorney, who had charge of the garnishment proceedings, that she wanted the matter straightened out and the money, paid in by virtue of such proceedings, returned to her "where it belongs." This evidence strongly indicates that she had abandoned the contract.

This action is primarily one for specific performance of a contract. Factual situations in cases of this nature are essentially different. Well-established law governing a situation, such as the evidence and circumstances disclose in the instant case, is stated in *Goodall v. Swartsley*, 108 Neb. 753, 189 N. W. 164, as follows:

" 'Courts of equity will not always enforce a specific performance of a contract. Such applications are addressed to the sound legal discretion of the court, and the court will be governed, to a great extent, by the facts and merits of each case.' *Morgan v. Hardy*, 16 Neb. 427." See, also, *J. H. Melville Lumber Co. v. Welpton Lumber Co.*, 121 Neb. 370, 236 N. W. 438.

In the case of *Tate v. Krentz*, 128 Neb. 68, 257 N. W. 495, this court said:

"It is a salutary rule that specific performance of an unrecorded contract to purchase real estate, the price not having been paid, is not demandable as a matter of right but depends on the circumstances of each particular case and the sound discretion of a court of equity.

"Another rule of equity is that the parties to an unrecorded contract for the sale and purchase of real estate, the price not having been paid, may destroy the written instrument itself or abandon it by parol."

In view of the precepts and the conclusions reached on the facts, plaintiff was not entitled to a decree for specific performance. It follows that the suit in equity was properly dismissed. The defendant is entitled to have the title quieted in him, as prayed for in his cross-petition.

In view of our holding, the accounting is unnecessary. The defendant was a tenant on part of the land in 1939, and his sister, Addie Walker, was the agent for the estate and collected the rents for that year. While reference is made to collection of rents in 1940, the date for settlement on the contract was December 23, 1939, and from and after that date the plaintiff manifested no interest in the contract, the subject-matter thereof, the land, or what was raised on it, and we deem further consideration of the accounting, under the circumstances here presented, unnecessary.

The trial court is directed to enter judgment in accordance with this opinion.

AFFIRMED IN PART AND REVERSED IN PART.