EMIL KJELDGAARD ET AL., APPELLEES, V. ALBERT L. CARLBERG, APPELLANT, IMPLEADED WITH CHRISTINA GLEESON ET AL., APPELLEES.

97 N. W. 2d 233

Filed June 12, 1959. No. 34557.

*Sidner, Lee, Gunderson & Svoboda,* for appellant.

*Raun & Samuelson* and *Charles E. Boughn,* for appellees Kjeldgaard et al.

*Moodie & Moodie,* for appellees Gleeson.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

The plaintiffs Emil Kjeldgaard, Frank L. Wieden, Maude L. Peters, Maude L. Peters, guardian of Robert A. Peters, a minor, and Fred Oberhelman brought this action in the district court for Burt County against Christina Gleeson, Leroy Gleeson, her husband, Christina Gleeson, administratrix of the estate of George Haye, deceased, and Albert L. Carlberg, defendants, for specific performance of an agreement entered into by the foregoing parties to survey certain land, and to assess damages that had arisen as a result of the failure of the defendant Carlberg to carry out the terms and conditions of the agreement. The trial court rendered judgment in favor of the plaintiffs and against the defendant Carlberg; assessed damages in the amount of $138 in favor of plaintiff Kjeldgaard and $40 in favor of plaintiff Wieden to be paid by said defendant Carlberg; and ordered that this defendant pay $50 toward the costs of the survey and the costs of this action.

The defendants Christina Gleeson, her husband Leroy Gleeson, and Christina Gleeson as administratrix of the estate of George Haye, deceased, filed a motion to dismiss for the reason that she had complied with the proposed changes set forth in the survey agreement. We find no ruling on this motion, however, these de-

fendants evidence no particular concern in this litigation. Insofar as this appeal is concerned, the only defendant is Carlberg.

The defendant filed a motion for new trial which was overruled. From the overruling of the motion for new trial, the defendant appealed.

For convenience we will refer to Emil Kjeldgaard as Kjeldgaard; Frank L. Wieden, as Wieden; Albert L. Carlberg, as Carlberg or defendant; Fred Oberhelman, as Oberhelman; R. H. Cutler, as Cutler; Willis Lind, as Lind; and other parties by their first and last names, or by their last names as occasion necessitates.

The plaintiffs' petition, insofar as necessary to set forth, alleged that on or about July 19, 1951, the plaintiffs and defendants entered into an "Agreement for Survey" of a parcel of land designated as the "Tryon estate land"; that it was the intention of the parties to the survey agreement to subdivide the Tryon estate land into four parcels of approximately 151 acres each; that in order to do this, the parties realized there might have to be an adjustment of the outside boundary lines of the Tryon estate lands, specifically the east and west boundaries of said land; that during the fall of 1951 or early spring of 1952, R. H. Cutler, the county engineer and surveyor of Burt County, commenced a survey of the land covered by the survey agreement and was unable to complete the survey, and requested Willis Lind, the county surveyor of Dodge County, to complete the survey; that on the 28th and 30th of December 1953, and the 5th and 7th of January 1954, Lind entered upon the land of the parties to the survey agreement and made a survey thereof, and on the 8th and 10th of March 1954, made a realignment survey of said land; that the six subdivisions of the parcel of land made by Lind are designated as Lots 1, 2, 3, 4, 5, and 6; and that Lot 1 is owned by Oberhelman, Lot 2 by Kjeldgaard, Lot 3 by the defendant Carlberg, Lot 4 by Wieden, Lot 5 by Maude L. Peters and Robert A. Peters, a minor, and

Lot 6 by Christina Gleeson and Leroy Gleeson, her husband, and is a part of the estate of George Haye, deceased.

The petition further alleged that Lind completed the survey and established some changes in the boundary lines of all of the tracts of land, and did so establish them that the four Tryon estate lots were approximately equal, and had 151 acres or more in each lot. The petition further alleged that all parties agreed to the new boundary lines except the defendant, and all adjustments were made to the satisfaction of all the parties to the survey agreement except the defendant who refused to change the boundary lines to conform to the survey made by Lind. The petition set forth certain facts to show damages suffered by Kjeldgaard and Wieden, and prayed for specific performance of the survey agreement, damages, costs, and equitable relief.

The defendant filed an amended answer and cross-petition denying the allegations of the plaintiffs' petition not specifically admitted. For further answer the defendant alleged that at the request of the plaintiffs, he signed the survey agreement; that said instrument was drawn by the plaintiffs and provided that in the event there were any shortages or over-runs found in the survey, the parties thereto were to settle the same on a take and give basis satisfactory to all concerned; that said plaintiffs represented to this defendant that he would be notified at the time the survey was to be run; that after the survey was run, if the parties agreed to the same, there would be adjustments made of their respective boundary lines; that if the parties did not agree to make the adjustments, there would be none made; that Cutler, county engineer of Burt County, mentioned in the survey agreement, did not make the survey in question, but it was made by another individual; that the so-called survey was improper and unauthorized, and the substitution made by Cutler in

having another surveyor survey the land in question was without the knowledge or authorization of the defendant; and that the plaintiffs and the substitute surveyor had arbitrarily made adjustments based on the unauthorized survey, had taken possession of the defendant's land, torn down his fences, and destroyed his crops. The prayer was that the plaintiffs' petition be dismissed and the defendant recover damages and costs.

The plaintiffs' reply to the amended answer and crosspetition of the defendant denied all allegations therein inconsistent with the allegations of the plaintiffs' petition.

Originally, the Tryon estate was one tract of land located in Sections 33 and 34, Township 24 North, Range 8 East of the 6th P. M., in Burt County. Sometime prior to 1934, this land was divided into four tracts which were not described by metes and bounds. Each tract of land, as divided, had some low land and some high bank land, and each tract was to contain approximately 151 acres, or a trifle more.

Wieden acquired a part of the Tryon property on January 30, 1931. This land is designated in the petition as Lot 4. Oberhelman took possession of his tract of land on or about February 24, 1947. This land is designated as Lot 1 in the petition. Kjeldgaard's land is designated as Lot 2 in the petition. In April 1935, the defendant purchased the land designated as Lot 3 in the petition.

We have refrained from setting forth the description of the lands owned by the parties mentioned above, for it is apparent from the record that the deeds to said lands contained descriptions reciting certain fractional subdivisions of sections and parts of sections. Since the tracts were odd acreages, these fractional designations were complicated, and apparently did not conform to the regular governmental surveys.

The Kjeldgaard, Carlberg, and Wieden lands are the principal lands involved in this controversy. We set forth a copy of exhibit No. 7 appearing in the record,

which shows the Kjeldgaard land to be directly west of the defendant's land, and the Wieden land directly east of the defendant's land. The outside lines indicate the defendant's land prior to the survey, and the inside lines show the defendant's land according to the Lind realignment survey.

Claus Peters testified that he lived within a mile of the Tryon estate land. He had no interest in this litigation, but acted on behalf of his sister-in-law who desired to have a survey of the lands made to obtain, as nearly as possible, the acreage content of the six parcels of land. He wrote out an agreement in longhand and employed an attorney at Lyons to prepare an agreement to survey. Before so doing, he did not consult the plaintiffs. The agreement was prepared and sent by the attorney to this witness on July 2, 1951. This agreement reads as follows:

"AGREEMENT FOR SURVEY. We, the undersigned present owners of the John H. Tryon Estate land, located on the North side of Highway No. 51 and running north to the Bancroft-Lyons Drainage Ditch, do hereby agree to have an official survey made by R. H. Cutler, County Engineer and Surveyor, Tekamah, Nebraska, who shall subdivide said land into four (4) parcels of approximately 151 acres each,—the intention being to conform as closely as possible to the original division made by Tryon. The cost of this survey shall be equally divided among the present owners and agents as the same appear hereon. If any irregularities, shortages, or over-runs are found by this survey the same are to be settled on a 'take and give' basis satisfactory to all concerned. Dated this 19th day of July, 1951.

"/s/ Christina Gleeson 7-19-51
Christine Gleason, for herself and as Administrator.
/s/ Frank L. Wieden 7-19-51
Frank L. Wieden
/s/ Albert L. Carlberg 7-20-51
Albert L. Carlberg
/s/ Emil Kjeldgaard 7-19-51
Emil Kjeldgaard
/s/ Maude L. Peters and Maude L. Peters, Gdn. A. Robert Peters 7-23-51
Maude L. Peters, for herself and as

guardian of Robert A. Peters, a minor.
/s/ Fred Oberhelman 7-19-51
Fred Oberhelman."

The agreement stated that Cutler was to make the survey. He entered upon the land of the parties and started to make the survey but, due to illness, was unable to carry on and complete it. He called upon Lind, the county surveyor of Dodge County, to make the survey, by writing Lind a letter dated December 11, 1953. This letter informed Lind that the survey had been ordered by Claus Peters, and asked Lind to get in touch with Claus Peters, which he did. Claus Peters went with Lind and showed him the extent of the survey, but took no part in it. Although Claus Peters had no interest in this litigation, he did obtain the signatures to the agreement to survey.

Lind testified that the only persons he talked to with reference to the survey prior to commencing it were Cutler and Claus Peters. No one made any suggestions as to where to place the lines or stakes. Cutler had located the four corners of Section 34, and all of the section corners except the northwest corner of Section 33, which Lind located and marked. Lind used the field notes that Cutler had prepared, and proceeded to complete the survey and divide the Tryon estate land into four tracts of approximately equal size.

The defendant objected to this survey for the reason that the adjustment of his boundaries in accordance therewith would give him only 147½ acres of land. The defendant refused to accept the findings of Lind. Lind then made a realignment survey which is the basis of this litigation. This realignment survey required adjustment to the defendant's east and west boundary lines. These adjustments were not parallel with, and equal distant from, the existing boundary lines, and were irregular. Apparently only 6 feet was involved on the defendant's east boundary line, and presented no difficult problem. On the west boundary

line, about 33 feet was taken out of the defendant's land at about the middle thereof. The defendant refused to accept this realignment survey for the reason that it would cause his land to have irregular fields, pointed rows, take out a part of his grove, and destroy his irrigation system.

After the defendant objected to this survey, Lind consulted with some of the plaintiffs. As a result, Oberhelman agreed to relinquish to Kjeldgaard up to 17 feet off of his east line near the south end of his property. Kjeldgaard agreed that Lind could take 25.9 feet at the south half of his east line, and 32 feet at the north half of his east line and give it to Carlberg, making the total width of Carlberg's south line 1155.1 feet. This was the only change made in the realignment survey which was made on March 8 and 10, 1954. Lind then computed the acreage content of each of the lots, as follows: Lot 2, Kjeldgaard's land, 153.18 acres; Lot 3, defendant Carlberg's land, 153.31 acres; and Lot 4, Wieden's land, 151.8 acres.

The defendant requested a deputy state engineer, Willis L. Brown, to survey the outside boundaries of Section 33, Township 24 North, Range 8 East of the 6th P. M., in Burt County. At this point in the trial the plaintiffs offered to pay their proportionate share of the costs to have a survey by a deputy state engineer selected by the defendant to make a complete survey of the Tryon estate land, and offered to abide by the division lines set up by him after he completed such survey of Sections 33 and 34, whatever he determined and found it to be, to find and determine the just, true, and correct division lines dividing the tract into four equal parts as near as possible, and as close to the old boundaries as possible, having in mind that it was desirable to keep the field as near an exact square as possible. There was an objection to this offer, and it was not accepted.

Lind testified that the object of the survey was to

divide the Tryon estate into four lots or subdivisions of equal acreage.

Kjeldgaard testified he understood that in accordance with the agreement to survey, fence lines might have to be changed on a give and take basis.

Wieden testified that the signing of the agreement to survey was for the purpose of getting the four lots divided equally, as near as possible, and he understood that new lines were to be placed where the survey showed they should be.

Oberhelman was willing to sign the survey agreement and to make the adjustments necessary, and he moved his fences accordingly.

The defendant testified that he signed the agreement to survey for the reason that he thought it was just an adjustment of fences, and did not think that it would require the taking of 4 acres of his land.

It appears from the evidence that Kjeldgaard and Wieden, after the realignment survey was made, moved their fences from the old boundary lines to the lines established by the realignment survey; that Carlberg moved the fences put in place by Kjeldgaard and Wieden back to the old boundary lines; and that Kjeldgaard, on another occasion, moved the fence back to the new realignment line in order to obtain pasture for his stock. In any event, the week before Arbor Day, the fence was removed by Carlberg, and the sheriff was called. Upon the insistence of the sheriff, the fence was left on the old line until such time as this matter could be settled, and did stay there in fact until August.

Kjeldgaard and Wieden testified to damages sustained by them, caused by the actions of Carlberg. Likewise, Carlberg testified to damages sustained by him caused by the actions of these plaintiffs. The defendant's cross-petition relating to damages was dismissed. We deem it unnecessary to set forth this testimony in view of what we say later in the opinion.

The defendant testified that the blue print of the ad-

justments as found by Lind was mailed to him, and that was the first time he observed that any adjustments would have to be made with reference to the boundary lines of his farm; that no one asked him if the adjustments were satisfactory; and that he objected to the adjustments and refused to move his fences unless he was ordered to do so by the court.

We have taken cognizance of the defendant's assignments of error and have considered the same in relation to this appeal. However, considering the record in its entirety, the controversy between the parties in this appeal should be determined as subsequently appears in the opinion.

We believe the following to be applicable to this appeal.

This case is triable de novo in this court. See Sofio v. Glissmann, 156 Neb. 610, 57 N. W. 2d 176.

In Mainelli v. Neuhaus, 157 Neb. 392, 59 N. W. 2d 607, this court said: "When land, or any interest therein, is the subject matter of an agreement the power of a court of equity to enforce specific performance thereof is beyond question. See, Bennett v. Moon, 110 Neb. 692, 194 N. W. 802, 31 A. L. R. 495.

"But such equitable remedy is not a matter of right but one that may be granted by the court in its sound judicial discretion, controlled by established principles of equity and depending upon the facts and circumstances of the particular case. It is not a discretion in the sense that it may be granted or denied at the will or pleasure of the judge. It is governed by the elements, conditions, and incidents that control the administration of all equitable remedies." See, also, Garsick v. Dehner, 145 Neb. 73, 15 N. W. 2d 235; Wiiest v. Pounds, 142 Neb. 882, 8 N. W. 2d 211; Mercer v. Payne & Sons Co., 115 Neb. 420, 213 N. W. 813.

"Specific performance will not be enforced unless the contract has been entered into with perfect fairness and without misapprehension, misrepresentation,

or oppression, or where it will be unjust or inequitable to do so." Morgan v. Hardy, 16 Neb. 427, 20 N. W. 337.

In 49 Am. Jur., Specific Performance, § 78, p. 95, it is said: "Courts of equity do not enforce specific performance of a contract where circumstances have arisen which makes its performance inequitable, * * *."

In the light of the evidence and the authorities heretofore cited, we conclude that specific performance of the agreement to survey, respecting the boundary lines of the lands here involved, should be denied. We find that the plaintiffs, Kjeldgaard and Wieden, and the defendant Carlberg are not entitled to a judgment for damages.

It appears from the record that the plaintiffs have made an earnest effort to settle this dispute and to avoid litigation. Under the circumstances, we conclude that the plaintiffs shall pay one-half of the costs and the defendants shall pay one-half of the costs in the district court and each party shall pay his own costs in this court.

REVERSED AND DISMISSED.