**Tommy MOORE, Petitioner,**

v.

**Lake F. RUSSELL, Warden, Tennessee State Penitentiary, Respondent.**

**Civ. A. No. 2180.**

United States District Court
E. D. Tennessee,
Northeastern Division.

Nov. 7, 1968.

T. W. Overall, Greeneville, Tenn., Alfred W. Taylor, Johnson City, Tenn., for petitioner.

David W. McMackin, Asst. Atty. Gen. of Tennessee, Nashville, Tenn., for respondent.

## MEMORANDUM OPINION

NEESE, District Judge.

The petitioner Mr. Moore is in custody of the respondent warden of a Tennessee state prison pursuant to the judgment of the Criminal Court of Washington County, Tennessee. He has applied to this Court for the federal writ of habeas corpus, claiming that he is in custody in violation of the Constitution of the United States. 28 U.S.C. §§ 2241(c) (3) and 2254(a).

This proceeding was commenced in the United States District Court for the Middle District of Tennessee, where a thoroughly excellent amended and supplemented petition was prepared and filed on behalf of the petitioner by appointed counsel. 28 U.S.C. § 1915(d). The application was then transferred to this Court, 28 U.S.C. § 2241, and such appointed counsel was relieved. New counsel was appointed for the petitioner in this Court. Additional trial counsel was appointed for the petitioner on May 8, 1968. A full evidentiary hearing was conducted before this Court on August 23, 1968. Counsel were then allowed additional time in which to file further depositions, exhibits and memoranda. Additional depositions were filed by the respondent on October 2, 1968, and the matter has now received the earnest consideration of the Court.

■■ This Court has jurisdiction to grant Mr. Moore's application for the federal writ of habeas corpus, because there exist circumstances which render the corrective process of the state of Tennessee available to him ineffective to protect his rights. 28 U.S.C. § 2254(b);

Irvin v. Dowd (1961) 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751. As concluded by the Tennessee Supreme Court on appeal from Mr. Moore's conviction, it does not appear that the state trial judge received any evidence whatever before deciding adversely to Mr. Moore his pretrial motions for a change of venue and a severance from his codefendants in the trial of the charges contained in the indictment returned against him. See Moore, et al. v. State (1966), unpublished, at page 9. Without overruling its earlier precedent directly or by implication, the highest appellate court of Tennessee found no error in the pretrial action of the trial judge, although such involved infringements of the petitioner's right to due process of law under both the federal and the Tennessee constitutions.

A brief statement of the factual situation is necessary to a decision, as follows: Mr. Moore was an inmate on Sunday, July 26, 1965 of the Washington County, Tennessee jail at Jonesboro on a misdemeanor charge. Nine other inmates were simultaneously incarcerated therein on felony charges, including two who were charged with murder. One of the other inmates, Mr. Elmer Ford, was of a particularly unsavory reputation and had been the source of constant trouble while in custody of the state authorities.

On the aforementioned date, Mr. Ford was found dead within the dayroom of the jail. He died of a stab wound made by a sharp instrument which penetrated his left breast to a depth of some 3½ inches. He had sustained fractures of his nose, bruises around his eyes, abrasions on his right leg, lacerations of his head, and two additional stab wounds in his abdomen.

Considerable publicity in the news media in the Washington County area followed the discovery of the body, commencing the next morning. A new committee was appointed to investigate conditions at the jail. Editorials urged action by officials. In one feature article in a county newspaper, entitled "Anatomy of a Cell-Block Murder", the author undertook to present the possible thoughts of the deceased and other inmates prior to the crime. Public interest in the incident was increased by a series of untoward incidents which concerned the physical facilities and administration of the jail in the (then) recent past. Publicity concerning the crime continued spasmodically until the date of the trial of the petitioner and his codefendants on Wednesday, September 29, 1965.

D. M. Guinn, Esq., counsel appointed to represent Mr. Moore in the state criminal prosecution, testified that he and other counsel representing others of the petitioner's codefendants visited the trial judge in his chambers just prior to the commencement of the trial. He testified that he invited the judge's attention to the petitioner's outstanding motions for a change of venue and a severance and advised Judge Hyder that he had evidence to present in support thereof. Mr. Guinn testified that Judge Hyder responded that he had read the motions and that it would not be necessary to offer any evidence thereon "because both motions will be overruled in any event. * * * "

Judge Hyder testified that he does not " * * * recall * * * " Mr. Guinn's telling him at any time that he was going to offer evidence in support of his motions, and that he did not " * * * rule * * * " that such motions would be overruled in any event and that therefore Mr. Guinn would not be allowed to introduce any evidence in support thereof. Nowhere is it contended, however, that Judge Hyder considered *any* evidence thereon before overruling Mr. Moore's motions for a change of venue and a severance. Before the taking of evidence on the trial commenced, in the absence of the jury, the trial judge allowed counsel for each of the defendants to make any motions desired. Motion for a severance was renewed on behalf of the petitioner's codefendant Robinson. Mr. Guinn followed with a perfunctory motion for a severance on behalf of the petitioner Mr. Moore " * * * on the same grounds I believe Mr. Epps has * * * ". The

trial judge stated he thought Mr. Guinn had not presented any order overruling " * * * those motions. * * * You file a motion for a severance and a motion for a change of venue, and the Court overrules those motions. * * * "

The trial judge testified that it was his considered judgment that the amount of pretrial publicity was insufficient to warrant a change of venue, and that he felt " * * * it would put the state in an almost impossible position * * * " to try one defendant at a time, and that he " * * * felt that justice required that the cases be tried as one case." He does not reveal the inspiration for such feelings. In connection with the motion for a change of venue, Judge Hyder stated his findings and conclusions as follows:

" * * * There was some publicity in the Jonesboro paper about the case because Jonesboro is the county seat; and there was, in my opinion, more publicity in that paper than there was in the Johnson City Press-Chronicle. The Jonesboro Herald-Tribune is a weekly paper and is not widely distributed in Washington County; it is distributed in the rural parts but not really over the entire part of the county; and I didn't feel that the publicity that the paper carried was unduly prejudicial, nor did I think that it spread across the county sufficient to cause a change of venue."

As to the petitioner's motion for a severance, Judge Hyder testified:

" * * * Well, it was my opinion that the indictment, being one indictment naming seven defendants for one act of alleged murder, which was supposed to have occurred in one jail cell, in which the defendants along with the alleged deceased were incarcerated, I felt that it would put the state in an almost impossible position to try the case, one defendant being tried at a time, since it was one event, one occurrence, one alleged assault by numerous people on a deceased; and I felt—I thought—that the motion for severance was one that addressed itself to

the Court in its discretion, and I felt that justice required that the cases be tried as one case."

It is abundantly indicated from the testimony of Judge Hyder, and this Court accordingly finds, as did the Tennessee Supreme Court, that he made his adjudications as to both the aforementioned pretrial motions of the petitioner on the basis of extraneous evidence beyond the record privately acquired by him through his own observations. Not only did Judge Hyder purport to know without legal evidence whether the outside influence of pretrial publicity had affected the climate in Washington County to such an extent that the resulting probability of unfairness in the ensuing trial required the procedural safeguard of a change of venue, he also purported to have sufficient knowledge of the evidence which might be introduced on the trial of Mr. Moore to form a judgment without legal evidence as to whether justice demanded a severance and separate trial for Mr. Moore.

Such pretrial procedure did not comport with due process of law under either the Tennessee Constitution or the Constitution of the United States. The Tennessee Supreme Court delineated the proper procedure for Tennessee trial judges to follow in such instances in the somewhat celebrated case of Caldwell v. State (1932), 164 Tenn. 325, 48 S.W.2d 1087.

The late Mr. Justice Cook stated therein for a unanimous court 34 years ago that such determinations are to be made on the basis of evidence, describing the procedure indicated as involving "a question of fact for the determination of the trial judge in the exercise of his sound discretion, which means judicial discretion exercised on full and fair consideration of the facts presented to the judge by the well-known and established mode of procedure. State v. Poe, 8 Lea, 647, 648. * * * " Ibid., 164 Tenn. at 331 (1), 48 S.W.2d at 1089. There, the trial judge had also considered in his adjudications his private observations. He had rested his decision on both the record before him and the private investigation

he, himself, had made outside of court; while, here, the trial judge considered no legal evidence at all. The Court said:

" * * * The trial judge's resort to private investigation indicates unwillingness to base his decision upon the legal evidence before him. The source and character of the evidence obtained through his private investigation and its probative value are not shown. The legal evidence in support of the motion offered by the defendant shows very great excitement and public interest protracted by political agitation and its attendant publicity and involving numerous charges against the defendant * * *. This was rebutted by the counter affidavits of the State, which was the only other legal evidence that could be considered. * * * " Ibid., 164 Tenn. at 332, 48 S. W.2d at 1090.

The Court said further: " * * * We cannot apply the rule of Ross v. State, 130 Tenn. [387,] 390, 170 S.W. 1026 wherein the court held that the determination of the trial judge upon the evidence presented was matter for his sound discretion, because it is impossible to know whether the legal evidence or his private investigation moved him to the conclusion reached. He could not legally act upon private knowledge obtained through private investigation. To so hold, in view of our rule that his exercise of discretion will not be reviewed if supported by the legal evidence, would in effect end the inquiry on review upon a showing that the trial judge considered evidence outside the record. There would be no way to determine whether the legal evidence or the private inquiry constituted the basis for the judge's exercise of discretion mentioned in Ross v. State, and like cases.

"The trial judge erred in accepting and considering evidence privately acquired by him or evidence beyond the record. * * * " Ibid., 164 Tenn. at 332–333, 48 S.W.2d at 1090.

The opinion pointed to the fact that the inquiry of an appellate court on review following the return of a guilty verdict by a jury, approved by the trial judge (as the thirteenth juror under Tennessee practice), is limited to whether the evidence upon which the verdict rests preponderates in favor of the innocence of the accused. The Court said: " * * * The application of these rules * * * presupposes a fair and impartial procedure in the trial court leading to the verdict, as well as whether * * * there was or could be a fair and impartial consideration of the facts in issue by a jury unaffected by outside or extraneous prejudicial influences. * * * " Ibid., 164 Tenn. at 354, 48 S.W.2d at 1096.

Further therein, the Court, after reiterating that the trial judge had gone outside the record and privately procured evidence which he considered in making his adjudication, had this to say: " * * * Persons on trial in courts of justice are entitled to a public hearing upon legal evidence. The rights of no citizen can be determined by evidence procured through his own secret and private inquiries. Such methods would invade not only the constitutional rights of persons accused of crime * * *, but would be contrary to correct ideals of judicial procedure.

"It could not be known upon what evidence the judge reached his conclusion, if, after hearing the legal evidence, he could be permitted to go out and privately procure and consider extraneous evidence in aid of his determination of a controverted fact. * * * (T)he private investigation of the trial judge and his acceptance of the private evidence as the basis of his conclusion was contrary to the spirit of our institutions and the letter of our Constitution.

" * * * The minimum or least effect we may give to the error of the trial judge in considering evidence not legally before him, is that such error destroys the presumption of accuracy which would otherwise attach to his ruling, when supported by material evidence. * * * " Ibid., 164 Tenn. at 356–357, 48 S.W.2d at 1097.

The opinion was concluded as follows:

" * * * It is our opinion that the defendant was not afforded the fair and impartial trial which is the right of all persons accused of crime, under the (Tennessee) Constitution, art. 1, § 9. It therefore becomes the duty of this court to reverse the judgment and remand the case * * * for a new trial." Ibid., 164 Tenn. at 358 [10], 48 S.W.2d at 1098.

■ This Court is required to dispose of this matter as law and justice require. 28 U.S.C. § 2243. " * * * Surely no fair-minded person will contend that those who have been deprived of their liberty without due process of law ought nevertheless to languish in prison. * * * " Fay v. Noia (1963), 372 U.S. 391, 441, 83 S.Ct. 822, 850, 9 L.Ed.2d 837, at 870 (headnote 40). " * * * Due process [of law] requires that the accused receive a trial by an impartial jury free from outside influences. Given the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of jurors, the trial courts must take strong measures to ensure that the balance is never weighed against the accused. * * * " Sheppard v. Maxwell (1966), 384 U.S. 333, at 362, 86 S.Ct. 1507, at 1522, 16 L.Ed.2d 600, at 620.

" * * * [O]ur system of law has always endeavored to prevent even the probability of unfairness. * * * " Idem., 384 U.S. at 352, 86 S.Ct. at 1517, 16 L.Ed.2d at 614[4].

In contemplation of the ensuing trial, the petitioner Mr. Moore, jailed as a misdemeanant, was to be surrounded with a larger group of codefendants, each of whom was facing more serious criminal charges. It was also imperative to his interests that the trial judge decide whether he was to be compelled to proceed to trial jointly with such codefendants or whether by reasonable anticipation based upon facts that might then be disclosed, he should be granted a severance and a separate trial from those accused along with him. Cf. State v. Turnbow (1960), 67 N.M. 241, 354 P.2d 533, 89 A.L.R.2d 461, 466 (headnote 1), citing and quoting from State v. Ochoa (1937), 41 N.M. 589, 72 P.2d 609, 620, which had cited and quoted from People v. Fisher (1928), 249 N.Y. 419, 164 N.E. 336, 338.

■ This cast a heavy burden on the trial judge. Correct ideals of judicial procedure and the federal and state constitutional rights of Mr. Moore required that the presiding judge receive legal evidence on the factual issues raised by Mr. Moore's motions. He was not authorized to use as evidence his own conceptions of what the facts might be. Caldwell v. State, supra, 164 Tenn. at 356, 48 S.W.2d 1087. Mr. Moore's chances for a fair trial depended entirely at that moment on the sound exercise of discretion by the trial judge, " * * * which means judicial discretion exercised on full and fair consideration of the facts presented to the judge * * *." Idem., 164 Tenn. at 331(1), 48 S.W.2d at 1089; see also People v. Eudy (1938), 12 Cal. 2d 41, 82 P.2d 359.

■ His was an option, but in exercising it he was not permitted to disregard solid and settled principles of law established for the protection of the petitioner and others similarly situated, including the principle of law that the judicial findings and conclusions be founded on legal evidence. Caldwell v. State, supra; Cohen v. Young, C.C.A. 6th (1942), 127 F.2d 721, 726; State v. Douglas, 87 Ariz. 182, 349 P.2d 622, 625; cf. also Epstein v. State (1963), 211 Tenn. 633, 649 [15], 366 S.W.2d 914, 921.

■ The trial judge has no judicial power as contradistinguished from the power of the law. His discretion is a legal discretion to be exercised in discerning the proper course prescribed by law with the consequent duty to follow that course. His will as a person is not to be done, but rather the will of the law. Osborn v. The Bank of the United States (1824), 9 Wheat. 738, 22 U.S. 738, 6 L.Ed.

204. Whatever may have been the personal observations and individual views of the judge as a person, these factors have no place whatever in his exercise of judicial discretion. Sykes v. Blakey, 215 N.C. 61, 200 S.E. 910, 911; Abbott v. L'Hommedieu, 10 W.Va. 677; Jones v. State, 94 Okl.Cr. 359, 236 P.2d 102, 108; Kjeldgaard v. Carlberg, 168 Neb. 662, 97 N.W.2d 233, 239; State ex rel. Pac. Tel. & Tel. Co. v. Duncan, 191 Or. 475, 230 P.2d 773; Rugg v. State, 278 App.Div. 216, 104 N.Y.S.2d 633, 636; Watt v. Stanfield, 36 Idaho 366, 210 P. 998, 1000.

Every citizen tried in the criminal courts of Tennessee has the right to a fair and impartial trial under the Tennessee Constitution, Article 1, section 9. The late Mr. Rogers Caldwell was the president of both a bank and a large financial house, owning or controlling the stock of both corporations, Caldwell v. State, supra, 164 Tenn. at 336, 48 S.W.2d 1087; yet he was entitled to and accorded that right. Mr. Moore, although convicted and now incarcerated for participating in a brutal jailhouse murder, is entitled to the same right; yet he has not received it.

There is no way for this Court to divine whether Mr. Moore's pretrial motions aforementioned should have been granted or denied. There is no way to know precisely the character and probative value of the evidence considered by the trial judge on the decisions of those motions. There is no way to know whether the minds of the jurors who convicted Mr. Moore were affected or unaffected by extraneous prejudicial influences. All the evidence forming the foundation for the exercise by the trial judge of judicial discretion emanated from outside the record of the trial. It was not arrived at by a fair and impartial judicial procedure; thus, Mr. Moore was deprived of due process of law in the making of those decisions.

The Tennessee Supreme Court suggests, in such situations, that the very least a Court should do is to presume that the judge's rulings on the pretrial motions were not correct. Ibid., 164 Tenn. at 356–357, 48 S.W.2d 1087. Following this Tennessee procedure, this Court then assumes such rulings were incorrect, and has the corresponding duty to sustain Mr. Moore's application for the federal writ of habeas corpus and provide for his retrial* or his release if not retried by the state of Tennessee within a reasonable time. Rule 81(a)(2), Federal Rules of Civil Procedure.

Before concluding this memorandum, however, the Court wishes to commend counsel for the excellent gratuitous representation given Mr. Moore. He could hardly have been accorded more efficient assistance of counsel had he been situated financially to pay its inestimable worth. The proficiency of Larimore Burton, Jr., Esq., of the Nashville, Tennessee bar, has been adverted to hereinbefore.

T. W. Jack. Overall, Esq., of the Greenville, Tennessee bar, continued in this Court the splendid services begun by Mr. Burton. Mr. Overall traveled extensively and expensively consulting with his client, continuing and instigating new investigations of the facts, and interviewing witnesses. As leading counsel, he precipitated an objection to inadmissible testimony which had been allowed to creep into the record. His unabated investigation of legal authorities produced the *Caldwell* case, supra, which is dispositive of the critical issue herein.

At Mr. Overall's request, Alfred W. Taylor, Esq., of the Johnson City bar, was associated by appointment as trial counsel. Mr. Taylor, while perhaps not delving vigorously by cross-examination into specifics on the post-hear-

---

* This disposition of the instant application renders redundant any consideration of the further grounds for relief advanced by the petitioner.

ing depositions, supplied skillful experience on the hearing and invaluable briefs with authorities. The Court has been served well by all three of these attorneys.

The writ of habeas corpus will issue, and the petitioner Mr. Moore will be released from custody by the respondent unless the state of Tennessee puts him to its charges again within a reasonable time.

It is so ordered.